# ISIDOR PAIEWONSKY ASSOCIATES, INC.; SHARP PROPER-TIES, INC., Third Party Plaintiff

## v.

# SHARP PROPERTIES, INC.; BARED JEWELERS OF THE VIRGIN ISLANDS, INC.; ARI CORP.; WEST INDIES CORP. (successor to General Trading Corp.), Third Party Defendant

### ARI CORP., Third Party Defendant

Bared Jewelers of the Virgin Islands, Inc., *Appellant*

[998 F.2d 145]

No. 92-7335

United States Court of Appeals

for the Third Circuit

June 24, 1993

448

JOHN H. BENHAM, III, ESQ. (Argued), (WATTS, STREIBICH & BENHAM), Charlotte Amalie, St. Thomas, V.I., *for appellee Sharp Properties*

MARIA T. HODGE, ESQ. (Argued); DENISE FRANCOIS, ESQ. (HODGE & FRANCOIS), Charlotte Amalie, St. Thomas, V.I., *for appellant Bared Jewelers*

BEFORE: BECKER, COWEN and ROTH, *Circuit Judges*

## OPINION OF THE COURT

BECKER, *Circuit Judge*

This appeal from an order of the District Court of the Virgin Islands raises a number of interesting jurisdictional and statutory issues. This case, which has a long and complicated procedural history, began as a dispute over the scope of an easement between two adjoining property owners in the main shopping district of downtown Charlotte Amalie. Ultimately, however, it evolved into a dispute over the enforcement of an arbitration award between the property owner, Sharp Properties, Incorporated ("Sharp"), and its head tenant, ARI Corporation ("ARI"). Based on the arbitration award, which was subsequently confirmed by the District Court, Sharp obtained a writ of assistance to have the U.S. Marshal's Service evict the subtenant, Bared Jewelers ("Bared"), from the property, even though Bared had not been a party to the arbitration. It is the grant of this writ of assistance that Bared now challenges on appeal.

Sharp has raised a number of challenges to our jurisdiction. Most significantly, it argues that we lack appellate jurisdiction over the appeal from the grant of the writ of assistance, which it claims merely executed a previously entered order. We conclude that we have jurisdiction, and therefore address Bared's arguments that

450

both the Virgin Islands' statute governing actions for the recovery of possession of real property and the federal Due Process Clause prohibit the eviction of Bared since it did not participate in the arbitration proceeding which ultimately provided the basis for its eviction. We reject these arguments, and accordingly will affirm the District Court's order.

## I. *Facts & Procedural History*

This lawsuit began in 1983 as a dispute between two adjacent property owners, Sharp and Isador Paiewonsky Associates, Inc. ("Paiewonsky"), over an alleged prescriptive easement. Included in Sharp's holdings is the Bolero Building, which was occupied by a long-term subtenant, Bared Jewelers. Paiewonsky originally brought suit requesting declaratory and injunctive relief against Sharp and ARI in the Territorial Court of the Virgin Islands, based on the alleged existence of a prescriptive easement benefitting Paiewonsky.

In 1987, the case was transferred to the District Court of the Virgin Islands. There Sharp asserted a cross-claim against its co-defendant, ARI, and brought the subtenant, Bared, into the suit as a third-party defendant. Sharp alleged that any prescriptive easement that had been created was the result of the actions of ARI and Bared in violation of their leases as tenant and subtenant, respectively.

At one point, Sharp and Bared tried unsuccessfully to negotiate a direct lease through which, presumably, they would have been able to resolve this dispute. Upon the failure of those efforts, and pursuant to an arbitration clause in the master lease between Sharp and ARI, Sharp made upon ARI a demand for arbitration to adjudicate ARI's alleged liability for the creation of the prescriptive easement, among other issues. In response to a motion by ARI, the District Court stayed the arbitration proceedings pending resolution of the easement dispute between Sharp and Paiewonsky. Subsequently, Paiewonsky and Sharp reached a settlement agreement creating mutual easements over their adjoining properties. The District Court approved the settlement without the assent of either ARI or Bared, which disagreed with several terms of the agreement. The court reasoned that the assent of the owners of the property was sufficient to validate the settlement. Accordingly, in 1990 the District Court entered an order approving the settlement agreement.

The arbitration between Sharp and ARI thereupon resumed. The arbitration encompassed a number of issues, including, most importantly for this appeal: 1) the alleged responsibility of ARI and/or its subtenant, Bared, for the creation of the easement that benefitted Paiewonsky; and (2) ARI's alleged violation of the master lease by allowing Bared's non-compliance with the non-competition clause of that lease. On these two issues, the panel of arbitrators found that, although neither ARI nor Bared was responsible for the establishment of the easement, Bared was bound by the non-competition clause which it had violated by operating a competing business, a liquor store, within the non-competition area. The arbitration panel ruled that Bared would have six months to come into compliance with the non-competition clause by ceasing its operation of the liquor store, but that after that time, if Bared was still non-compliant, the lease between Sharp and ARI would terminate and possession of the property would be returned to Sharp.

Following the termination of the arbitration, Sharp returned to the District Court and initiated procedures seeking confirmation of the arbitration award, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. Sharp moved for confirmation of the arbitration award in two separate actions. First, Sharp moved for confirmation of the award in the lawsuit originally begun by Paiewonsky, in which Sharp, ARI, and Bared were by then parties. Bared opposed the confirmation of the arbitration award, arguing that it was improper because Bared had not been a party to the arbitration proceedings. The District Court rejected this argument. In its memorandum opinion, the court explained:

> Bared's claims that it would be prejudiced by the award because it was not a party to the arbitration [are] not persuasive. Since Bared was not a party to the arbitration, it is not bound by the arbitration rulings. If this series of rulings has a negative impact upon its rights under its lease with ARI, Bared has other remedies at law to redress such grievances, which are beyond the scope of the present matter.

On February 18, 1992, the district court confirmed the arbitration award as part of the Paiewonsky litigation.

In addition, Sharp filed a separate lawsuit in the District Court of the Virgin Islands to confirm the award. However, upon resolution of the Paiewonsky suit, the court dismissed this separate action as

moot. See Sharp Properties, Inc. v. ARI Corp., (D.V.I. No. 92-7361, June 3, 1992). Bared did not appeal either of the District Court's decisions.

Subsequently, Sharp moved for a writ of assistance, pursuant to Fed. R. Civ. P. 70, to effectuate the court's judgment confirming the arbitration award. Over Bared's opposition, the District Court granted the writ of assistance, which authorized U.S. Marshals to evict Bared from the Bolero Building so that Sharp could regain possession. Sharp has subsequently leased the property to Columbian Emeralds, which is not a party to this lawsuit.[1]

This appeal—of the order issuing the writ of assistance—followed. The heart of Bared's argument on appeal is that the writ of assistance, which stemmed from the arbitration proceeding to which Bared was not a party and which resulted in Bared's eviction, violates V.I. Stat. Ann. tit. 28, § 281, which requires that the party in possession of property be joined in an action for recovery of possession. Bared also submits that the issuance of the writ of assistance violated its due process rights. As the propriety of the issuance of the writ of assistance presents questions of law, we exercise plenary review.

## II. Jurisdiction and Mootness

We must first address Sharp's motion to dismiss this appeal for lack of appellate jurisdiction. Sharp contends that, inasmuch as the writ of assistance is not a judgment on the merits, but is an order enforcing a judgment, it cannot be appealed. In addition, Sharp argues that Bared's appeal is moot because the property in question has been relet to a non-party to this suit, Columbian Emeralds.[2]

---

[1] Although the Columbian Emeralds lease agreement itself is not explicitly contingent upon the outcome of this litigation, prior to signing the lease, Sharp and Columbian Emeralds signed a letter agreement in which Columbian Emeralds acknowledged the existence of this lawsuit and agreed not to hold Sharp liable for any impact the outcome of this lawsuit might have on its continuing possession of the Bolero Building.

[2] Sharp also claims that Bared, as a non-party to the arbitration proceeding, lacks standing to challenge a writ of assistance to effectuate the confirmation of the award resulting from that proceeding. We find no merit in this argument. Bared does not here challenge the substance of the arbitration proceeding itself, but rather challenges the issuance of a writ which resulted in its eviction

## A. *Appellate Jurisdiction*

■ Sharp contends that an order granting a writ of assistance is not appealable under 28 U.S.C. § 1291 and that Bared is merely trying to circumvent the timeliness requirements of Fed. R. App. P. 4 by attempting to appeal that order rather than the underlying judgment on the merits, i.e., the District Court's order confirming the arbitration award. We disagree. Although we acknowledge that as a general matter parties should appeal from the judgment on the merits rather than from post-judgment execution orders, post-judgment orders are often appealable, and the circumstances presented in this case illustrate why. Indeed, to deny Bared the right to appeal the issuance of the writ of assistance that resulted in its eviction from the Bolero Building would, in our view, require an unnecessarily formalistic construction of 28 U.S.C. § 1291.

■ Congress has granted the courts of appeals jurisdiction over appeals "from all final decisions of the district courts of the United States . . . and the District Court of the Virgin Islands." 28 U.S.C. § 1291. In Catlin v. United States, 324 U.S. 229, 65 S. Ct. 631 (1945), the Supreme Court defined a "final decision" for purposes of appeal "generally [as] one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Id. at 233, 65 S. Ct. at 633 (emphasis added). Although, typically, litigants must appeal from the substantive judgment on the merits (except cases of interlocutory appeals authorized by 28 U.S.C. § 1292), Catlin's definition of finality explicitly applies only as a general matter, and leaves room for exceptions in appropriate situations. Consequently, we read Catlin as consistent with the conclusion of several other courts of appeals that "[a] final decision is one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness, for giving effect to the judgment and leaves nothing to be done in the cause save to superintend, *ministerially*, the execution of the decree." In re Moody, 825 F.2d 81, 85 n.5 (5th Cir. 1987) (emphasis added) (quoting City of Louisa v. Levy, 140 F.2d 512, 514 (5th Cir. 1944)); accord Youghiogheny & Ohio Coal Co. v. Baker, 815 F.2d 422, 424 (6th Cir.

---

from property it was subleasing. Given that Bared has suffered tangible damage as a direct result of the issuance of the writ of assistance, and has a colorable legal claim, Bared has standing to bring this challenge.

1987); United States v. Western Elec. Co., 777 F.2d 23, 26 (D.C. Cir. 1985). This qualification to Catlin's general rule enables litigants to appeal an order to effectuate a judgment on the merits when that order is more than merely ministerial, and we endorse that approach here.

The Supreme Court's opinion in Blossom v. Railroad Co., 68 U.S. 655 (1864), similarly holds that, in assessing the appealability of a post-judgment order, the appropriate inquiry is whether the order is more than simply administrative in that it affects rights or creates liabilities not previously resolved by the adjudication on the merits. In Blossom, a district court issued an order foreclosing a mortgage and ordering the sale of a private road. The property was subsequently put up for sale at a marshal's auction. Although the appellant bid for the property at the auction, the sale was subsequently suspended. The appellant then moved the district court to issue a writ ordering the sale to be completed. The motion was denied and the bidder appealed. The Supreme Court denied the appellee's motion to dismiss for lack of appellate jurisdiction:

> Although this court has frequently decided that where the act complained [of] was a mere ministerial duty, necessarily growing out of the decree which was being carried into effect, no appeal would lie, it has never decided that in no case arising after a decree, which is final only in the sense which would allow it to be appealed, will an appeal be allowed from an order of the court, however it might affect important interests, or decide matters not before the court when the first decree was rendered. Such a doctrine would place a very large proportion of the most important matters . . . beyond the reach of an appeal.

Id. at 673.

Blossom has been said to stand for a rule of "practical finality," see 9 James W. Moore et. al., Moore's Federal Practice ¶ 110.14, at 182-83 (2d ed. 1992). While we acknowledge that "practical finality" has been largely discredited in the pre-final judgment context, see, e.g., Coopers & Lybrand v. Livesay, 437 U.S. 463, 476 n.30, 98 S. Ct. 2454, 2462 n.30 (1978), it is alive and well in the post-final judgment sphere. As we recognized in Ohntrup v. Firearms Ctr., Inc., 802 F.2d 676 (3d Cir. 1986), "'[i]t is sometimes appropriate that the requirement of finality be given a 'practical rather than a technical

construction . . . . And this is especially so when supplementary post-judgment orders are involved because the policy against and the probability of avoiding piecemeal review are less likely to be decisive after judgment than before.'" Id. at 678 (citing Plymouth Mutual Ins. Co. v. Illinois Mid-Continental Ins. Co., 378 F.2d 389, 391 (3d Cir. 1967)); accord Pennsylvania v. Flaherty, 983 F.2d 1267, 1276 (3d Cir. 1993).

In order to illustrate the urgency, or at least the practical necessity, of permitting an appeal from an order granting the writ of assistance, we contrast the situation at bar with the situation that would have existed had Bared appealed the district court's confirmation of the arbitration award, when an appeal arguably would have been premature. The arbitration award itself prohibited any adverse action against Bared for a six-month grace period. At that point in time, it was not known whether Sharp would eventually seek Bared's eviction. In contrast, once the writ of assistance issued and Bared was forced out of possession of its space in the Bolero Building, the dispute between Sharp and Bared had fully ripened. Given these considerations, to say that Bared can not now appeal the writ of assistance would ignore our prudential interests in adjudicating fully ripened claims.

Other courts of appeals have determined that they had appellate jurisdiction over challenges to orders granting or denying writs of assistance. See, e.g., Dexter Horton Nat'l Bank v. Hawkins, 190 F. 924 (9th Cir. 1911).[3] See also United States v. Young, 806 F.2d 805 (8th Cir. 1986) (per curiam) (reviewing order issuing writ of assistance without discussing appellate jurisdiction); United States v. One (1) Douglas A-26B Aircraft, 662 F.2d 1372 (11th Cir. 1981)

---

[3] In Hawkins, the court held that an order authorizing a writ of assistance is a final, appealable order. In that case, an Alaskan bank which had gone out of business sent currency to its affiliate bank in Seattle in order to satisfy its debts. However, the receivers for the Alaskan bank successfully petitioned a court for a writ of assistance, which resulted in the seizure of the currency. The Ninth Circuit rejected the Alaskan bank's argument that writ of assistance could not be appealed, explaining:
We think the form of the order is immaterial. The effect of it was to adjudicate the rights of the parties . . . and the refusal to vacate the writ of assistance was, in effect, to say that the marshal and receivers were entitled to the property as against the claim of the petitioner. Such being the case, it makes but little difference what form of procedure the controversy was brought into the record.
190 F. 925.

(same); Kelly v. Greer, 354 F.2d 209, 210 (5th Cir. 1965) (order quashing a writ of assistance was a final appealable order).

■ We agree with these cases and, in light of the foregoing discussion, conclude that the order granting the writ of assistance is appealable. The issuance of the writ of assistance was not simply a ministerial or administrative act. The original order of February 18, 1992 held that the arbitration decision should be confirmed. Given that the judgment on the merits merely confirmed the results of arbitration between ARI and Sharp, it follows that important possessory rights of Bared pursuant to its lease with ARI were not fully considered by the District Court at that stage of the litigation.[4] When the District Court granted the writ of assistance it performed more than a ministerial act, because it effectively decided matters and interests not before it when it issued its earlier judgment on the merits, especially the possessory rights of Bared. Our appellate jurisdiction confirmed, we turn to Sharp's other procedural challenges.

B. *Mootness*

Sharp contends that this appeal is moot because the Bolero Building has been relet to a non-party, Columbian Emeralds. Sharp asserts that even if we were to vacate the writ of assistance, we could not order the eviction of Columbian Emeralds in order to return possession to Bared, and that we therefore cannot grant meaningful relief should Bared prevail.

■■ As a general matter, "'an appeal will be dismissed as moot when events occur during [its] pendency . . . which prevent the appellate court from granting any effective relief.'" General Elect. Co. v. Cathcart, 980 F.2d 927, 934 (3d Cir. 1992) (citing In re Cantwell, 639 F.2d 1050, 1053-54 (3d Cir. 1981)). However, as the Supreme Court recently made clear, this does not mean that an appeal is moot whenever a court cannot restore the parties to the status quo ante. See Church of Scientology v. United States, 113 S. Ct. 447, 450 (1992). Rather, when a court can fashion *some form* of meaningful relief," even if it only partially redresses the grievances

---

[4] In its opinion accompanying its order confirming the arbitration award, the District Court acknowledged that it had not considered the merits of Bared's arguments in opposition to the arbitration award. See supra pages 453–54.

of the prevailing party, the appeal is not moot. Id. (emphasis in the original). Moreover, a case is not moot if the court can fashion effective remedies, even if the remedies were not initially requested in the pleadings. See Kirby v. United States Dep't of Housing & Urban Dev., 745 F.2d 204, 207 (3d Cir. 1984).

In addition to repossession of the property in question, Bared has requested other relief in response to Sharp's motion to dismiss. Specifically, Bared has requested: (1) restitution for the value of displacement; (2) injunctive relief granting Bared possession of the parking lot for the Bolero Building (which Columbian Jewelers is apparently not using); and (3) injunctive relief affording Bared possessory rights to commercial space in a building that Sharp currently plans to construct near the Bolero Building. As long as we can impose at least one of these remedies and that remedy would provide some effective relief to Bared, this appeal is not moot.

■■ These enumerated remedies requested by Bared are feasible and, if granted, would provide some relief. Specifically, should we find the writ of assistance invalid, we could remand to the district court to order the payment of restitution to Bared for the value of its possession of the Bolero Building. We note that § 74 of the Restatement of Restitution provides that "[a] person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside." Restatement (First) of Restitution § 74 (1937).[5] Moreover, the Restatement expressly authorizes restitution when a party has been wrongfully deprived of possession to real property to which he or she subsequently lost possessory rights. See id. at § 74 cmt. c., illus. 8. We therefore hold that the appeal is not moot.[6]

---

[5] Under the Virgin Islands Code, "[t]he rules of the common law, as expressed in the restatements of law approved by the American Law Institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." V.I. Stat. Ann. tit. 1, § 4.

[6] Having concluded that restitution can be granted and would provide meaningful relief to Bared, we need not decide whether the district court may grant the other relief Bared has requested should it prevail, including the right to regain possession of the Bolero Building.

## C. *Jurisdiction of the District Court*

■ In 1984, Congress amended the Revised Organic Act of the Virgin Islands, imposing new limitations on the general original jurisdiction of the District Court of the Virgin Islands over cases involving local law. 98 Stat. 1738, 1745, P.L. No. 98-454 (codified at 48 U.S.C. § 1541 et seq.). Specifically, the 1984 amendment eliminates concurrent jurisdiction in the District Court when jurisdiction is vested in the local courts of the Virgin Islands. See Estate of Thomas Mall, Inc. v. Territorial Court of Virgin Islands, 923 F.2d 258, 260 (3d Cir. 1991). The 1984 amendment, P.L. 98-454, reads in relevant part:

> In addition to the jurisdiction described in subsection (a) of this section [primarily federal question, diversity and bankruptcy jurisdiction] the District Court of the Virgin Islands shall have general original jurisdiction in all causes in the Virgin Islands the jurisdiction over which is not then vested by local law in the local courts of the Virgin Islands.

48 U.S.C. § 1612(b). Congress also included an express reservation of the District Court's jurisdiction over cases pending on the day before the effective date of the statute. Specifically, § 703(b) of Pub. L. 98-454 provides that, "[t]he provisions of this section shall not result in the loss of jurisdiction of the District Court of the Virgin Islands over any complaint or proceeding pending in it on the day preceding the effective date of this [statute]."

In Estate of Thomas Mall, supra, we held that the amended statute did not, by its own force or "ex proprio vigore," divest the district court of jurisdiction over local actions. Rather, we held that divestiture of jurisdiction would occur only once the Virgin Islands Legislature specifically enacted legislation to vest exclusive jurisdiction over local actions in the local courts. See id. at 262-63. The Virgin Islands Legislature has done so, having amended V.I. Stat. Ann., tit., 4 § 76(a), which now provides:

> Subject to the original jurisdiction conferred on the District Court by section 22 of the Revised Organic Act of 1954, as amended, *effective October 1, 1991,* the Territorial Court shall have original jurisdiction in all civil actions regardless of the amount in controversy . . . .

V.I. Stat. Ann, tit. 4, § 76(a) (Supp. 1991) (emphasis added).

■ Bared argues that as of January 5, 1985, the effective date of the 1984 amendments,[7] the District Court lost jurisdiction over newly-filed cases. Bared therefore submits that the transfer of this case in 1987 from the Territorial Court to the District Court was improper and that the district court consequently lacked jurisdiction to enter the February 25, 1992 order confirming the arbitration award.[8]

Bared acknowledges that in Bruner v. United States, 343 U.S. 112, 72 S. Ct. 581 (1954), the Supreme Court held that a statute which divests a court of jurisdiction does so over pending cases, unless Congress expressly states otherwise. Id. at 116-17, 72 S. Ct. at 584. In its 1984 amendments to the Revised Organic Act, Congress explicitly reserved the District Court's jurisdiction over cases pending on the effective date of the statute. See Section 703 of Pub.L. 98-454.[9] Bared contends that Bruner's express reservation requirement has only been met with respect to cases pending on the effective date of the 1984 amendments to the Revised Organic Act, January 5, 1985, see supra n.7, not the effective date of § 76(a), the implementing legislation, which was October 1, 1991. In other words, it submits that the relevant effective date for purposes of the express jurisdictional reservation is that of the 1984 amendments to the Revised Organic Act, not that of § 76(a).

However, this argument ignores our reasoning in Estate of Thomas Mall, in which we held that the jurisdiction-stripping provisions of the 1984 amendments are not self-executing. As we ex-

---

[7] The 1984 amendments to the Revised Organic Act provide that "Amendment by Pub.L. 98-545 effective on the ninetieth day following Oct. 5, 1984."

[8] Bared correctly notes that the District Court was not authorized to hear this case based on its federal jurisdiction. The parties have not alleged diversity of citizenship, and there is no federal question jurisdiction because, even though this case implicates the substantive provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., see infra note 9, it is well-established that the Federal Arbitration Act cannot supply federal jurisdiction where it does not otherwise exist. See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32, 103 S. Ct. 927, 942 n.32 (1983) ("[the Federal Arbitration Act] creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction").

[9] Section 703(b) of Pub.L. 98-454 provides that: "The provisions of this section shall not result in the loss of jurisdiction of the District Court of the Virgin Islands over any complaint or proceeding pending in it on the day proceding the effective date of this amendatory Act . . . ."

460

plained in Estate of Thomas Mall, the provisions limiting the District Court's jurisdiction lay dormant until the Virgin Islands Legislature took affirmative steps to effectuate the statute, which it did not do until 1990 by revising § 76(a). Consequently, the congressional reservation of the District Court's jurisdiction over pending cases must be interpreted to apply to all cases pending before the District Court as of October 1, 1991, the effective date of the Virgin Island Legislature's implementing legislation, V.I. Stat. Ann. tit. 4, § 76(a). Given our reasoning in Estate of Thomas Mall, the express reservation of jurisdiction over pending cases would have no meaning unless it applies to the effective date of the implementing legislation rather than the 1984 amendments themselves. Contrary to Bared's argument, the January 5, 1985 effective date merely marks the date upon which the congressional authorization for the Virgin Islands Legislature to vest exclusive general original jurisdiction in the local courts took effect. We therefore reject Bared's contention that the District Court lacked subject matter jurisdiction over this lawsuit.

### III. *The Merits (Validity of the Eviction)*

#### A. *Applicability of Landlord Tenant-Law and the Federal Arbitration Act*

We now turn to the primary issue on the merits—whether the district court erred in granting the writ of assistance which led to Bared's eviction from the Bolero Building. Bared argues that because it was not a party to the arbitration proceedings between Sharp and ARI which the District Court confirmed and which formed the basis for the District Court's decision to issue the writ of assistance, the writ was improperly issued under Virgin Islands law. More specifically, Bared contends that V.I. Stat. Ann. tit. 28, § 281, which requires actions to recover possession of property to be brought against the party in actual possession, prohibits the eviction of Bared based on an arbitration proceeding to which it was not a party.

Sharp responds that § 281 does not apply to arbitration proceedings. Sharp submits that because § 281 is not controlling, under fundamental common law principles, once ARI, the head tenant, lost its legal interest in the property in question as a result of the arbitration award, Bared, the sublessee, no longer had a right to continued possession of the property.

■■■ We agree with Sharp that Bared's argument is inconsistent with basic principles of landlord-tenant law. As a general matter, it is well-established that a subtenant's interest in real property cannot exceed that of the head tenant because the subtenant's interest in the real property is strictly derivative of that of the head tenant. Normally, then, if a head tenant loses its rights to continued possession of the property in question, so does the subtenant:

> Since the subtenancy is carved out of the head leasehold, an early termination of the head tenancy should cause the subtenancy to fall in. Anyone taking a subtenancy should be aware of his vulnerability in this respect . . . . If the landlord exercised a power to terminate an account of the head tenant's breach, this will bring down the subtenancy, too.

Roger A. Cunningham, William B. Stoebuck & Dale A. Whitman, The Law of Property § 6.68, at 385 (1984). Thus, to the extent that common law principles of the rights of subtenants inform our analysis here, Bared cannot complain when its rights to continued possession of the Bolero Building ended upon an adverse adjudication of the rights of its sublessor, ARI.

These principles might be deemed inapplicable if, for example, there had been a "sweetheart deal" between ARI and Sharp such that ARI in effect voluntarily surrendered its interests in the property to undermine Bared's portion. However, Bared conceded at oral argument that we are not confronted with such a situation here.

In addition, there is nothing in the Federal Arbitration Act, 9 U.S.C. § 1 et seq., which precludes the enforcement of an arbitration clause between a landlord and a head tenant to which the subtenant is not a party.[10] The Federal Arbitration Act states:

> A written provision in any . . . contract evidencing [an intent in] a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transac-

---

[10] The substantive provisions of the Federal Arbitration Act apply to the arbitration agreement between Sharp and ARI. The statute applies to "[a] written provision in any maritime transaction or a contract evidencing commerce . . . " 9 U.S.C. § 2. The Federal Arbitration Act defines "commerce" to include commerce "in any Territory of the United States or in the District of Columbia." 9 U.S.C. § 1. Cf. Kanazawa Ltd. v. Sound, Unlimited, 440 F.2d 1239 (9th Cir. 1971) (the Federal Arbitration Act applies to commerce in Guam).

tion . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.[11] There is no provision of the Federal Arbitration Act that suggests that this general policy favoring the enforcement of agreements to arbitrate should be suspended in a situation such as the one before us.

In Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S. Ct. 927 (1983), the Supreme Court was faced with a similar situation. In Moses H. Cone there was a dispute between a hospital, a building contractor, and an architect over the construction of additions to the hospital. Although the hospital and the building contractor had entered into a binding agreement to arbitrate, no such agreement existed between the hospital and the architect. The Court rejected the hospital's argument that the arbitration clause should not be enforced because the hospital's related disputes with the architect would have to be resolved through a judicial forum. The Court explained that "[u]nder the Federal Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." Id. at 20, 103 S. Ct. at 939.

Similarly, in Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923 (3d Cir. 1985), we upheld the enforcement of an arbitration clause between a plaintiff and his former employer, Kidder, Peabody, even though the outcome of the arbitration would affect the tangible interests of other parties to the lawsuit who were not parties to the arbitration agreement. In Barrowclough, the plaintiff, along with his beneficiaries, brought claims under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 10001 et seq., against Kidder, Peabody and several of its employees as well as other related defendants, in a dispute concerning payment of a deferred compensation plan for highly compensated employees. We rejected the plaintiffs' argument that the arbitration clause between the former employee and Kidder, Peabody should not be enforced because the other plaintiffs and defendants in the litigation were not parties to the arbitration agreement. See id. at 938. We ex-

---

[11] In addition, the Federal Arbitration Act authorizes district courts to confirm arbitration awards when the parties have agreed to have the arbitration award entered as a judgment by the court. See 9 U.S.C. § 9.

plained that "[s]ince the non-parties to this arbitration agreement have related and congruent interests with the principals to the litigation," we would uphold the district court's decision to enforce the arbitration clause. Id. See also Cecil's Inc. v. Morris Mechanical Enters., Inc., 735 F.2d 437, 439 (11th Cir. 1984) (enforcing indemnification agreement between general contractor and subcontractor even though the underlying liability was determined by arbitration to which subcontractor not a party); In re Oil Spill by the "Amoco Cadiz", 659 F.2d 789, 795-96 (7th Cir. 1981) (binding plaintiff to outcome of arbitration between its principal and the defendant even though plaintiff would be a non-party to arbitration proceedings).

Applying Barrowclough's logic here, because Bared's and ARI's interests are directly related, if not in fact congruent, it can fairly be assumed that within the arbitration proceedings ARI advanced arguments protective of Bared's interests. There is, therefore, no reason to conclude that the Federal Arbitration Act's overarching policy favoring the enforcement of arbitration awards does not apply to this case.

B. *V.I. Stat. Ann. Title 28, § 281*

 Bared argues that, even if neither traditional common law principles nor the Federal Arbitration Act itself militate against enforcement of the arbitration clause between Sharp and ARI despite its adverse impact on a non-party to the arbitration, V.I. Stat. Ann. tit. 28, § 281 does. According to Bared, § 281 prohibits the enforcement of an arbitration award between two parties if it results in the dispossession of a third party that is in actual possession of the property in question. Section 281 provides:

> Action to recover possession; parties.
> Any person who has a legal estate in real property, and a present right to the possession thereof, may recover such possession, with damages for withholding the same, by an action. Such action shall be commenced against the person in the actual possession of the property at the time, or, if the property is not in the actual possession of anyone, then against the person acting as the owner thereof.

V.I. Stat. Ann. tit. 28, § 281.

In support of its interpretation of § 281, Bared cites Billman v. Alley Assocs., 17 V.I. 397 (D.V.I. 1980), in which the District Court, in granting a motion to dismiss in an action to recover possession of property, stated that "[i]nsofar as the action for possession is concerned, the joinder of all subtenants is clearly required by Virgin Islands statute, 28 V.I.C. sec. 281." Id. at 399. We believe, however, that Bared's interpretation of § 281 is flawed and its reading of Billman overbroad. Section 281 explicitly limits its requirements to "actions to recover possession." We read "actions to recover possession" as a term of art that refers to those procedures to regain possession of property expressly addressed by chapter 13 of title 28 of the Virgin Islands Code. See V.I. Stat. Ann. tit. 28, § 281 et seq. (stating procedural and substantive requirements for actions to recover possession of property). We therefore do not read the term to include the enforcement of arbitration proceedings stemming from an arbitration clause.

More specifically, § 281 was not intended to apply to the instant situation, in which a party has lost its rights to continued possession of property as a result of the enforcement of an arbitration clause governed by the Federal Arbitration Act. We reject Bared's implicit contention that the word "action" in § 281 should be construed to include arbitration proceedings. We note that § 281's enactment dates back to 1921, which antedates the current prevalence of agreements to arbitrate. The Federal Arbitration Act itself, which was instrumental in creating the increased reliance on arbitration, was not enacted until 1925. See Act of February 12, 1925, 43 Stat. 213; see generally Henry C. Strickland, The Federal Arbitration Act's Interstate Commerce Requirement, 21 Hofstra L. Rev. 385, 388-89 (1992). In our view, it would be unreasonable to conclude that when the Virgin Islands Legislature enacted § 281, it had the prescience to envision the widespread use of arbitration and intended to impose a procedural requirement on arbitration proceedings.

In addition, § 281 states that an aggrieved party "*may* recover" its property by an action to recover possession. See § 281 (emphasis added). This statute therefore does not establish such actions as the exclusive means for regaining rights to property possession. The use of arbitration toward that end, therefore, is permissible and is not governed by § 281. Of course, should the Virgin Islands Legislature disagree with our interpretation of § 281, it is free to amend the statute.

Finally, Billman, upon which Bared relies, states nothing contrary to our analysis. Rather, without discussion, Billman merely stated what has just been said—in actions to recover possession of property, which was at issue in Billman itself, the current possessor of the property must made a party to the litigation. Billman does not address the situation here, involving the full enforceability of an arbitration clause.[12]

## C. *Due Process*

■■■ Finally, Bared argues that its due process rights were violated when it was forcibly removed from the Bolero Building. Bared contends that, because it was not a party to the arbitration proceedings that ultimately led to this result, its right to procedural due process was denied.

We need not address this argument at length, for on these facts Bared cannot claim any constitutional deprivation. We recognize at the outset that when the U.S. Marshals forced Bared out of the Bolero Building, Bared was deprived of a protected property interest that triggered the procedural requirements of the Due Process Clause. See Board of Regents v. Roth, 408 U.S. 564, 577-78, 92 S. Ct. 2701, 2709 (1972). However, we conclude that Bared cannot now argue that its exclusion as a party from the arbitration proceedings infringed its due process rights when, although a party to the overarching litigation, it never moved the District Court for a stay of the arbitration proceedings. Similarly, it never moved the court or the arbitration panel for its inclusion as a party to the proceedings. Although Bared, was a participant in the overarching litigation as well a witness (through an agent of the company) in the actual arbitration proceedings, it never requested its inclusion in the arbitration. We cannot say that Bared Jewelers was *denied* a right to be heard as party to the arbitration when it never even asked for this right. Simply put, Bared waived its right to challenge its exclusion (as a party) from the arbitration proceedings when it allowed the arbitration to proceed without requesting its inclusion.

At all events, we note that Bared was given an opportunity to voice its position on several occasions. Specifically, as a litigant to

---

[12] Because we conclude that § 281 does not apply to arbitration proceedings governed by the Arbitration Act, we need not address Sharp's argument that the Arbitration Act pre-empts § 281.

the underlying lawsuit, Bared opposed the confirmation of the arbitration award before the District Court. In addition, it opposed the issuance of the writ of assistance before the District Court. Finally, as discussed above, see supra pages 463–64, Bared's interests were directly related to, if not congruent with, those of ARI, which was party to the arbitration. Bared's interests were therefore heard to a considerable extent by the arbitration panel. For all the above-stated reasons, we conclude that Bared's due process rights were not violated.

The order of the District Court issuing a writ of assistance to effectuate its February, 1992 order confirming the arbitration award between Sharp and ARI will be affirmed.