[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I FACTS
This action was instituted by the plaintiff, Mastrobattisto, Inc. (Mastrobattisto), against the defendants, Tabacco Son Builders, Inc. (Tabacco), S.F. Bristol, LLC (Bristol) and XL Specialty Insurance Company (XL) for the alleged failure of Tabacco, the general contractor of a construction project at property owned by Bristol, to pay Mastrobattisto, a subcontractor, for excavation work. Mastrobattisto alleges breach of contract, quantum meruit and unjust enrichment against Tabacco and Bristol and makes a claim pursuant to General Statutes §49-37 (a) on a surety bond against Bristol and XL.
On February 25, 2002, Bristol and XL filed a motion to compel arbitration of the claims asserted by Mastrobattisto or, in the event that is denied, a motion to stay the proceedings pending before this court until arbitration of claims brought by Tabacco against Bristol, pursuant to a contract between those parties, is completed.
 II DISCUSSION
"[A]rbitration is a creature of contract." Stratford v. InternationalAssn. of Firefighters, AFL-CIO, Local 998, 248 Conn. 108, 121,728 A.2d 1063 (1999). "In determining whether a party is bound to arbitrate, the courts look at the language employed in the contract."Scinto v. Sosin, 51 Conn. App. 222, 239, 721 A.2d 552, cert. denied,247 Conn. 963, 724 A.2d 1125 (1998). "Even though it is the policy of the law to favor settlement of disputes by arbitration . . . arbitration agreements are to be strictly construed and such agreements should not be extended by implication. . . . Persons thus cannot compel arbitration of CT Page 9948 a disagreement between or among parties who have not contracted to arbitrate that disagreement between or among themselves." (Citations omitted.) Weslevan University v. Rissil Construction Associates, Inc.,1 Conn. App. 351, 354-55, 472 A.2d 23 (1984).
The contract between Mastrobattisto and Tabacco, which is the basis of this action, does not contain an arbitration clause. The contract between Tabacco and Bristol, on the other hand, does contain an agreement to arbitrate.[1] Bristol and XL argue that Mastrobattisto's subcontract with Tabacco "derives" from this prior contract between Bristol and Tabacco which contains the agreement to arbitrate. (See Defendants' Memorandum of Law, p. 2.) These defendants further argue that because the claims asserted by Mastrobattisto are "inherently and integrally dependent upon the claims asserted by Tabacco in its action" and "because it [Mastrobattisto] derived a significant benefit from the Agreement [between Tabacco and Bristol] even though it did not execute the Agreement"; (see Defendants' Memorandum of Law, p. 4); the court should stay this action by Mastrobattisto and compel it to join in the pending arbitration between Tabacco and Bristol. Bristol and XL argue that Mastrobattisto, although not a signatory to the arbitration agreement, is estopped from avoiding arbitration as it has "knowingly exploited" the Tabacco-Bristol contract. (See Defendants' Memorandum of Law, p. 6.)
Mastrobattisto counters that there is no authority under Connecticut law to estop it from avoiding arbitration. Unlike the cases cited by Bristol and XL in support of their estoppel argument, Mastrobattisto argues that it received no direct benefit from, nor did it knowingly exploit, the Bristol-Tabacco contract.
"The issue of whether a nonsignatory to an agreement to arbitrate can be compelled to arbitrate has been considered in several instances by the United States Court of Appeals for the Second Circuit. In deciding these cases, the court has turned for guidance to the Federal Arbitration Act,9 U.S.C. § 1 through 15. In Fisser v. International Bank, 282 F.2d 231,233 (2d Cir. 1960), the court wrote: `It does not follow . . . that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision. For the Act contains no built-in Statute of Frauds provision but merely requires that the arbitration provision itself be in writing. Ordinary contract principles determine who is bound by such written provisions and of course parties can become contractually bound absent their signatures.'" TotalProperty Service of New England, Inc. v. Q.S.C.V., Inc., 30 Conn. App. 580,587, 621 A.2d 316 (1993). "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally should apply ordinary state-law principles that govern the formation of contracts." (Internal quotation marks omitted.) Gibbs v. Connecticut General Life Ins. Co., CT Page 9949 Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 567009 (March 3, 1998, Hennessey, J.) (21 Conn.L.Rptr. 533, 534). "General Statutes § 52-408[2] . . . which concerns agreements to arbitrate generally, provides that an arbitration agreement shall be `valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally.' A party's claim that it is not a signatory to a contract and therefore not bound by the agreement is clearly `sufficient cause . . . for the avoidance of contracts generally.'" Total Property Service of NewEngland, Inc. v. Q.S.C.V., Inc., supra, 30 Conn. App. 588.
Connecticut's "comprehensive statutory scheme regarding arbitration, General Statutes §§ 52-408 through 52-424, controls arbitration . . . where the common law is inconsistent with our statutory scheme." Bennettv. Meader, 208 Conn. 352, 355, 545 A.2d 553 (1988). General Statutes § 52-409[3] sets forth the grounds for staying an action pending arbitration. The statute "provides relief when a party to a contract contains arbitration clause desires arbitration of a dispute, and the other party, instead of proceeding with arbitration, institutes a civil action to resolve the dispute. The party desiring arbitration can then seek a stay of the civil action." (Emphasis in original.) SuccessCenters, Inc. v. Huntington Learning Centers, Inc., 223 Conn. 761, 768,613 A.2d 1320 (1992).
Bristol and XL invoke federal case law in an attempt to avoid the statutory requirement that a party subject to a stay of proceedings be a signatory to the arbitration agreement. Bristol and XL first cite Fisserv. International Bank, supra, 282 F.2d 231, for the proposition that a nonsignatory party can be bound by the arbitration clause of a contract where it can be shown that the nonsignatory was the alter ego of a signatory to that contract. In comparing a parent company I (nonsignatory) to a "puppeteer" who has directed its "marionette" to sign the arbitration clause, the court in Fisser held that the parent, "like its marionette . . . is bound to submit to arbitration." Id., 234-35. Bristol and XL fail, however, to provide any evidence either that Mastrobattisto is the parent company or alter ego of Tabacco or that it directed Tabacco to sign the arbitration agreement with Bristol. Hence, the analogy of Fisser must fail.
Bristol and XL contend that the estoppel argument can also be used in situations where a nonsignatory has "exploited an agreement which encompasses an arbitration clause. . . ." (See Defendants' Memorandum of Law, p. 6.) As an example of the type of exploitation necessary to bind a nonsignatory to an arbitration clause, Bristol and XL cite DeloitteNoraudit A/S v. Deloitte Haskins Sells, U.S., 9 F.3d 1060 (2d Cir. 1993). In that case, the alleged form of exploitation utilized by the CT Page 9950 defendant nonsignatory was the continued use of the trade-name "Deloitte," a right conferred upon all affiliates of Deloitte Haskins 
Sells International by virtue of the signing of an agreement in 1990. In that case, the court said that "Noraudit [the nonsignatory] did . . . receive a copy [of the Agreement]. . . ." Id., 1064. "Noraudit failed to object to the Agreement when it received it and . . . knowingly accepted the benefits of the Agreement through its continuing use of the name `Deloitte.' Thus, Noraudit is estopped from denying its obligation to arbitrate under the 1990 Agreement." Id. In the case before the court, by contrast, not only is there no evidence that Mastrobattisto derived any direct benefit from or exploited the Tabacco-Bristol contract, there is no indication that Mastrobattisto had any knowledge of the contents of that contract.
Bristol and XL aver that there is Connecticut authority for the estoppel argument to compel arbitration by a nonsignatory. In SawmillBrook Racing Assn., Inc. v. Boston Realty Advisors, Inc.,39 Conn. App. 444, 664 A.2d 819 (1995), Bristol and XL claim that nonsignatories were "bound to arbitrate because their assent was indicated by participation in the arbitration proceeding. . . ." (See Defendants' Memorandum of Law, p. 7.) Not only does this proposition alone distinguish Sawmill from the case before the court, but also theSawmill court's expansion on the facts that "Mattabassett [the signatory's nominee for the purpose of taking title to real estate] . . . filed a counterclaim in the arbitration proceedings seeking relief pursuant to the agreement to arbitrate . . . [and] proceeded to arbitrate the matter over a period of approximately three years. This constituted an acceptance of the benefits of the contract to arbitrate, and estops them from asserting a claim of lack of authority." Id., 454-55. By contrast, in the case before the court, there is no evidence that the plaintiff either sought to participate in arbitration or did, in fact, participate in any arbitration proceedings.
Likewise, the reliance of Bristol and XL on Waterbury v. Merrill Lynch Co., Superior Court, judicial district of Waterbury, Docket No. 102136 (November 24, 1992, Barnett, J.), is also misplaced. In that case, unlike the one before the court, the nonsignatories, not the signatories, were the parties seeking to take advantage of the arbitration clause, not to compel arbitration against the will of a nonparty to the contract.
The so-called "direct benefit" to Mastrobattisto which estops it from avoiding arbitration is, according to Bristol and XL, the fact that its "subcontract with Tabacco is based expressly and entirely upon Tabacco's obligation to provide goods and labor under its Agreement with Bristol." (See Defendants' Memorandum of Law, p. 7.) The rule is inapposite to the situation of a subcontract resulting from a general contract as in the CT Page 9951 case before the court because "although . . . [Tabacco and Mastobattisto] are interested in the same question [i.e., whether the job was completed in a workmanlike manner] and in proving or disproving the same set of facts, [i.e., whether Bristol is liable for payment of goods and labor,] each has, by separate and distinct contracts, chosen the process to determine those facts using its own preferred method. The commonality of interest in proving or disproving the same facts is not enough to establish privity." (Internal quotation marks omitted.) Young v.Metropolitan Property Casualty Ins. Co., 60 Conn. App. 107, 115,758 A.2d 452, cert. denied, 255 Conn. 906, 762 A.2d 912 (2000). "The [defendants'] rights and those of . . . [Mastrobattisto] arise from separate contracts, each with its own provision specifying the forum for dispute resolution. Therefore, there can be no privity because the same legal rights are not involved. Clearly, the . . . [plaintiffs] rights cannot be unilaterally usurped by the . . . [defendants] by the mere invitation to participate in arbitration when its contract provides it the right to litigate its claims. By arguing that the . . . [plaintiff] was invited to participate in the arbitration and that its decision to decline that invitation, based on its contract rights, should expose it to liability from which it is collaterally estopped from contesting, urges us to disregard the contractual rights for which one party bargained." Id.
In addition, the Mastrobattisto-Tabacco contract fails the "positive assurance" test enunciated in Scinto v. Sosin, supra, 51 Conn. App. 232, because the Tabacco-Bristol contract conferred upon Mastrobattisto "no rights to alter the responsibilities or privileges of the signatory. . . ." Id. Additionally, nothing in the Tabacco-Bristol contract refers to Mastrobattisto, nor does anything in the Mastrobattisto-Tabacco contract refer to the arbitration clause of the Tabacco-Bristol contract. Accordingly, there is "sufficient evidence for the trial court to determine with positive assurance that . . . [Mastrobattisto's contract] was not part of the . . . [Tabacco-Bristol] contract and, therefore, not subject to the arbitration clause." Id.
Bristol and XL next argue that even if Mastrobattisto is not compelled to arbitrate its claims, this action should be stayed pending the outcome of the arbitration between Tabacco and Bristol because of the dependency of Mastrobattisto's claims on Tabacco's claims against Bristol. In furtherance of this argument, they cite Isidor Paiewonsky Associates,Inc. v. Sharp Properties, Inc., 998 F.2d 145, 154 (3d Cir. 1993), in which the court held that it was not necessary to name a subtenant in possession of demised premises as a defendant in an action by the landlord against the primary tenant to recover possession where the primary tenant lost its legal interest in the property as the result of an arbitration award. "[A] subtenant's interest in real property cannot exceed that of CT Page 9952 the head tenant because the subtenant's interest in the real property is strictly derivative of the head tenant." Id. This argument is a convoluted analogy presented without any evidence that Mastrobattisto's contract with Tabacco constitutes a subservient interest in the Tabacco-Bristol contract in the same manner that a sublease constitutes an interest in real estate subservient to the primary lease. Secondly, the subtenant in Sharp did not initiate its own action against the primary tenant for monetary damages; it merely experienced the "fall-out" from the arbitration award against the primary tenant in the landlord's lawsuit.
Bristol and XL contend that the "derivative" contract theory of compelling arbitration enunciated in Isidor Paiewonsky Associates, Inc.v. Sharp, supra, 998 F.2d 154, was upheld in a subsequent Third Circuit case, Eli Pritzker v. Merrill Lynch, Pierce, Fenner Smith, Inc.,7 F.3d 1110 (3d Cir. 1993), which reversed the District Court's denial of a motion to compel arbitration. In that case, the motion to compel arbitration was brought by the named defendants, a financial consultant and a sister corporation of the defendant broker. The financial consultant and sister corporation defendants seeking arbitration were nonsignatories to the contract containing the arbitration clause. The plaintiffs opposed the motion for arbitration on the basis that the movants were nonsignatories; however, the court, in reversing the lower court's denial of the motion for arbitration, analogized the broker signatory to the "principal" and the consultant and sister corporation nonsignatories to the broker's "agents" and ruled that "[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." Id., 1121. In essence, the court held simply that it would "extend the scope of the arbitration clauses to agents of the party who signed the agreements." Id., 1122. Bristol and XL have presented no evidence that Mastrobattisto was the agent of Tabacco.
Finally, Bristol and XL contend that "Bristol has denied liability to Tabacco on the grounds of poor workmanship and Tabacco's failure to complete the project in accordance with the agreement. Tabacco's claims and Bristol's defenses necessarily involve the work that Mastrobattisto provided to the Project as subcontractor to Tabacco." (Emphasis added.) (See Defendants' Memorandum of Law, p. 9.) These defendants provide no evidence, however, that the Tabacco-Bristol lawsuit is based on the quality of Mastrobattisto's work at the job site. It is possible that Bristol's defenses to Tabacco's lawsuit are based on work provided by Tabacco or by subcontractors other than Mastrobattisto. These facts, if proven, would then negate the argument now seemingly advanced by Bristol that both Bristol and Tabacco claim inferior workmanship by Mastrobattisto. Furthermore, it is of no consequence that CT Page 9953 Mastrobattisto's damages are limited by the contract price agreed to by Bristol and Tabacco. This is irrelevant to the question of whether the Bristol defense of Tabacco' s poor workmanship is, in fact, the Tabacco defense of Mastrobattisto's poor workmanship.
For the foregoing reasons, the motion to compel arbitration and the motion for stay of proceedings are hereby denied.
Berger, J.