**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Lyle HATCH, Defendant.**

**Civ. No. 76–1520.**

United States District Court, D. New Jersey.

Sept. 25, 1989.

Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin by S.M. Chris Franzblau, Roseland, N.J., for plaintiff.

Colleen Mahoney, for defendant.

### OPINION

HAROLD A. ACKERMAN, District Judge.

The application under my consideration today arises out of a 1976 consent judgment entered between the Securities and Exchange Commission ("SEC") and Mr. Lyle Hatch. The defendant Hatch has brought a motion to vacate the consent judgment. On November 5, 1984, I denied

defendant's similar motion. The background of this matter was set out in detail in my earlier opinion. *See SEC v. Hatch*, [1984] Fed.Sec.L.Rep. Paragraph 91, 835, at 90, 188, 1984 WL 2660 (D.N.J.1984). Before assessing the merits of the parties' contentions, I will offer a brief summary of the matter's history, with special attention paid to developments since November 5, 1984.

## BACKGROUND

On August 2, 1976, the SEC filed a complaint in the United States District Court for the District of New Jersey against defendant Hatch, charging violations of the periodic filing requirements and the antifraud provisions of the federal securities laws pursuant to Section 13(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. Section 78m(a), and Rule 13a–13 thereunder, 17 C.F.R. 240.13(a)–13, Section 10(b) of the Exchange Act, 15 U.S.C. Section 78j(b) and Rule 10b–5 thereunder, 17 C.F.R. 240.10b–5, respectively.

On August 31, 1976, defendant Hatch submitted to the Court's jurisdiction, waived the entry of findings of fact and conclusions of law, and consented, without admitting or denying the allegations in the complaint, to the entry of a final judgment of permanent injunction by consent.

In its complaint the SEC alleged that from around January 1, 1974 to September 1, 1974, the defendant Hatch acted in concert with three other named defendants, while employed as an assistant treasurer and a municipal bond salesman at Fidelity Union Trust Company ("Fidelity Bank"), to violate and to aid and abet violations of the before mentioned sections of the Exchange Act. The SEC alleged that he had so by engaging in a pattern of activity of "bond swapping" and "adjusted trading"—transactions effected for the purpose of concealing losses in Fidelity's municipal bond department. Allegedly, the amount of losses concealed were (1) realized loss of $2,003,-921.85 and (2) unrealized loss of $1,305,-795.81. In view of the fact that Fidelity Union Bancorporation, Fidelity Bank's parent, was required to file quarterly reports on Form 10–0 with the SEC, the SEC alleged that as a direct result of the defendant's conduct, including Hatch, Fidelity filed two false and misleading quarterly reports. By his consent, Mr. Hatch was permanently enjoined from violating or aiding and abetting violations of the aforementioned sections of the Exchange Act.

On November 5, 1984, I denied defendant's motion to vacate this consent decree.

In his 1984 application, Mr. Hatch stated that the following circumstances demonstrated the need to vacate the consent judgment:

(1) the two indictments returned by the United States Grand Jury charging Mr. Hatch with criminal violations were ultimately disposed of by dismissal (one by a court, the other by the federal government);

(2) the consent decree had become an increasing burden to the continued employment of Mr. Hatch in the securities field;

(3) there had been no violation of the injunction since no action had been taken by the SEC in that regard since the judgment was entered;

(4) defendant Hatch was then employed in the sale of bonds as an employee of Bevil, Bressler & Schulman of Livingston, New Jersey. He had to supply for his employer's personnel records information concerning the litigation which gave rise to the consent order as well as the underlying Grand Jury investigation. Defendant asserted that the consent decree was entered into with the hope that it would be the best method of disposing of an embarrassing and uncomfortable situation. Instead, it had affected his good name and representation; and

(5) Mr. Hatch had to explain all details and ramifications for his conduct which lead up to the consent judgment when he was applying for an insurance agent's license which he subsequently obtained.

In November, 1984, I concluded that the defendant's contentions were unpersuasive. First, I held that the dismissal of the criminal indictments was irrelevant to a determination of civil liability, and evidenced no

change of circumstances showing that a wrong had been committed by the entry of a consent decree. Second, I found that Mr. Hatch had only made conclusory allegations concerning the consent decree's effect on his continuing employment. I further found that he was employed and also did not have any problem obtaining an insurance agent's license. I further noted that even had Mr. Hatch shown changed circumstances with respect to his employment opportunities and the embarrassment attendant to such a consent order, he could not prove that these occurrences were *unforeseen* at the time of the order's entry. I also observed that Mr. Hatch's contention that he had not violated the injunction since its inception, had no bearing on whether I should lift the injunction under the law. Accordingly, I denied Mr. Hatch's earlier application for relief from the consent judgment.

Now, defendant Hatch has returned before me to seek vacation of the consent injunction again. He contends that circumstances have changed subsequent to my November 5, 1984 opinion and order which are sufficient to warrant my vacating the consent judgment.

The defendant's claims are that:

1. Since the stock market crash of October, 1987, the bond market has dramatically changed, rendering small firms such as defendant's current employer, E.A. Moos, Inc., noncompetitive and forcing him to start to look for other employment.

2. The consent decree constrains defendant's employment prospects because it constitutes a statutory disqualification that must be disclosed to all exchanges and regulatory agencies that any potential employer is a member of or is subject to, requiring a background check of any person that has been enjoined. *See* Securities Exchange Act of 1934 Section 3(a)(39)(E), 15 U.S.C. § 78C.

Defendant states that he learned of this statutory disqualification in May, 1985. Had he known of it in 1976, he contends that he would not have entered into the consent decree. He points out that the disqualification negatively impacts on his opportunity to seek employment with a large brokerage house because he must be cleared before hiring. Such clearance has a dual impediment (1) some employers don't want to bother executing the clearance which, defendant states, has happened to him already, and (2), even if they do, it takes six-nine months to execute the process—in the meantime he would be unemployed to the detriment of his family and himself.

3. It is defendant Hatch's belief that he will receive no job offers until the judgment is vacated. (Hatch Aff. Paragraphs 16–18).

The defendant has also found that his increasing age is an impediment to his employment prospects. At age 42, he is considered an "old man" in the securities business. (Hatch Aff. Paragraph 16).

4. Defendant has worked as a retail bond salesman for the past 22 years and does not intend to be a wholesale trader. As a salesman, defendant states that he is not in a position to commit the conduct enjoined by the consent decree and will consent to remain in a sales position. (Hatch Aff. Paragraph 20).

5. An additional five years have passed with no violations of securities laws charged by the SEC, thus extending defendant Hatch's clean record to 13 years. (Hatch Aff. Paragraph 21).

## DISCUSSION

As set forth in my earlier opinion, a consent judgment is a judicial act and "possesses the same force and character as a judgment rendered following a contested trial." *See Siebring v. Hansen*, 346 F.2d 474, 477 (8th Cir.), *cert. denied*, 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352 (1965); *Inmates of Boys' Training School v. South Worth*, 76 F.R.D. 115, 123 (D.R.I. 1977). I may set aside a consent judgment if the defendant meets one of the requirements under Rule 60(b) of the Federal Rules of Civil Procedure.

Rule 60(b) of the Federal Rules of Civil Procedure provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken."

As earlier acknowledged, the defendant has moved the court based on Federal Rule of Civil Procedure 60(b)(5) and (b)(6).

Since Rule 60(b)(6) relief is only available where subsections (1) through (5) do not apply, *see Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir.1975) (Garth, J.) and since 60(b)(5) is clearly the appropriate section here, I will not consider defendant's request for Rule 60(b)(6) relief. Moreover, I note, in passing, that were I to consider the defendant's application under (b)(6), I would essentially be repeating my (b)(5) analysis, since such analysis would be on the same facts and also import an extremely similar legal analysis. With this preliminary observation out of way, I turn to my 60(b)(5) analysis.

■ Rule 60(b)(5) provides that relief should issue where "the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, *or it is no longer equitable that the judgment should have prospective application.* (Emphasis added). A Rule 60(b)(5) motion for relief from final judgments or orders no longer equitable requires that there be *a change in circumstances from the time of the order necessitating relief.* In a similar context, before Congress promulgated the rules, in *United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), Justice Cardozo said:

"We are not doubtful of the power of a court of equity to modify an injunction in adoption to changed conditions.... A continuing decree of injunction directed to events to come is subject always to adaption as events may shape the need." *Id.* at 114, 52 S.Ct. at 462; *see De Filippis v. United States*, 567 F.2d 341, 342 (7th Cir.1977), *overruled on other grounds*, 663 F.2d 1354 (7th Cir.1981). *See generally* 11 C. Wright & A. Miller, *Federal Practice and Procedure*, Section 2863, at 204–211 (1973).

■ The defendant, movant here, must clearly show a "grievous wrong evoked by new and unforeseen conditions." *U.S. v. Wheeling Pittsburgh Steel Corp.*, 818 F.2d 1077, 1088 (3d Cir.1987); *De Filippis*, 567 F.2d at 334 (*both quoting Swift & Co.*, 286 U.S. at 119, 52 S.Ct. at 464); *see also Philadelphia Welfare Rights Org. v. Shapp*, 602 F.2d 1114, 1119 (3d Cir.1979) ("[rule 60(b)(5) ] relief is extraordinary and may be granted only upon a showing of exceptional circumstances"), *cert. denied*, 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 660 (1980)). The evidentiary burden on the movant is *extreme*. The United States Court of Appeals, Judge Sloviter writing for the panel, explained that:

"A party to a consent decree, having made a 'free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment,' bears a burden which 'is perhaps even more formidable than had they litigated and lost.' " *Wheeling Pittsburgh Steel Corp.*, 818 F.2d at 1088 (*citing United States Steel Corp. v. Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1274 (3d Cir.1979)). *See generally* 10 C. Wright & A. Miller, *supra*, Section 2863, at 207 (strong showing required before court will modify or vacate judgment).

I do not believe, as the defendant submits, that the Third Circuit Court of Ap-

peals relaxed the standards under the Rule and *Swift* and its progeny in *SEC v. Warren*, 583 F.2d 115 (3d Cir.1978).

To the contrary, the *Swift* standard remains in force as indicated by my citation to post-*Warren* 60(b) cases. The emphasis in *Warren*, as I have noted in my previous opinion, was that a motion to dissolve an injunction was in the Court's discretion and that such dissolution would occur where the dangers that the injunction was intended to eliminate disappeared and where the consent judgment worked extreme and unnecessary hardship on the defendant under the present circumstances.

■ Defendant Hatch states that the 1987 stock market crash has caused the injunction to work a grievous wrong against him because it limits his ability to seek different and better employment, since he is also subject to a statutory disqualification (unforeseen by him at the time of his entering the consent injunction).

Specifically, the crash and statutory disqualification, according to him, work a grievous wrong against him because these factors have limited his ability to gain better employment at a large brokerage house, the only type of firm attracting clients and remaining profitable, post-crash. Boutique firms, like the one Mr. Hatch is working in now, are struggling after the crash according to him and may not remain economically viable post-crash.

I do not find that such circumstances work a grievous harm to Mr. Hatch. First, the crash occurred in October, 1987. As of the date of deliver of this opinion (September 25, 1989) Mr. Hatch's current employer is still in business—almost *two* years after the crash. Mr. Hatch still has his job with Moos. The injunction does not bar him from making a living. I therefore see no grievous harm in light of these facts put forth by Mr. Hatch.

I also do not find that the crash and the negative effects of a statutory disqualification were unforeseen. Anyone involved, even peripherally, with the markets should realize that they are risky; one involved in it through employment should foresee those risks. Accordingly, I conclude that defendant Hatch cannot rationally argue that a crash was unforeseen.

Further, even if a disqualification itself was unforeseen, the consent judgment's negative effects on his employment opportunities could not reasonably have been unforeseen. As Mr. Hatch admitted in his previous application to this court, a certain amount of embarrassment/stigma attended entry of the judgment. In fact, Moos did not hire him until he explained the cause and nature of the injunction to them. (Hatch Aff. Paragraph 14). Moreover, disclosure of such injunctions is the clear intent of Congress in its promulgation of the securities laws. *See* Securities Exchange Act of 1934, Section 3(a)(39)(E), 15 U.S.C. § 78c; *see also* Securities Exchange Act of 1934, Section 15(b)(4)(C), 15 U.S.C. § 780. Hence, I find that the negative effects of his entering the consent judgment on his employment prospects could not have been unforeseen. For these reasons, I conclude that the crash and the statutory disqualification do not militate in favor of vacating the consent judgment.

I am further unpersuaded by Mr. Hatch's other arguments. With respect to his advancing age (42 years old), Mr. Hatch should have foreseen that the nature of his business, in his words, "a young man's business," would dictate that the range of his employment opportunities would contract as he aged. This consideration thus should have been weighed when he agreed to the entry of the judgment.

I am also unpersuaded by Mr. Hatch's contentions that he is not in a position to violate the injunction and that he has complied with the judgment since its entry on August 31, 1976—over 13 years ago. First, he is not in such position because the injunction remains in effect, precluding him from improper behavior. Second, he is bound by law to comply with the injunction. That he is adhering to its dictates now actually fuels the argument that it should remain in effect.

Mr. Hatch's assertion that he has not violated the injunction is also a legally insufficient ground to vacate a decree under

relevant standards. As I have previously ruled, it is not unforeseeable or a hardship on Mr. Hatch that he has not violated the securities laws since 1976.

In considering the dangers which the injunction was intended to eliminate, I find unpersuasive the defendant's argument that as a retail bond salesman rather than a wholesale trader or manager, he is no longer in a position to violate the securities laws. He continues to work in the securities field and, in fact, sought relief from this injunction so that he may further his career by seeking employment with larger, national brokerage houses. Thus, he is presently, and intends to remain, in a position to commit future securities laws violations similar to those for which he was enjoined. The injunction therefore continues to serve as a potential deterrent to either civil or criminal wrongs.

I also note here an important distinction between civil and criminal liability in this matter. Mr. Hatch characterizes the earlier dismissals of criminal charges against him as a complete exoneration of his conduct while employed at Fidelity Bank. (Hatch Aff. Paragraph 18).

As I observed in my earlier opinion, such criminal action dismissals are of no relevance to a determination of civil liability. The action giving rise to the injunction before us was a *civil* matter; there has been no exoneration regarding defendant Hatch's liability therein.

Rather than seeking exoneration by litigating this matter, Mr. Hatch chose to enter into the consent decree. It is only by entry of this decree that plaintiff SEC settled this action. Defendant Hatch will not be heard now to assert his innocence of the underlying charges in seeking vacation of this permanent injunction.

In sum then, Mr. Hatch's application to vacate the injunction does not come close to clearly showing "a grievous wrong evoked by new and unforeseen conditions." At best, Mr. Hatch has shown the *possibility* of discomfort or inconvenience evoked by *reasonably* foreseeable circumstances. Under the strict standard of Rule 60(b)(5), *Swift* and its progeny, I therefore do not

grant the relief which the defendant Hatch requests at this time. Defendant's motion is denied.