277 F.Supp.2d 610 (2003)
Eric CHRISTIAN, Sr., as Administrator of the Estate of James George Sewer, et. al., Plaintiff,
v.
ALL PERSONS CLAIMING ANY RIGHT, TITLE OR INTEREST IN ALL PROPERTIES KNOWN AND DESCRIBED AS: All Properties known as Newfound Bay including but not limited to 9A, 9D, and 9G Newfound Bay, Newfound Bay No. 1, Newfound Bay No. 2 excepting only 9C Newfound Bay East End Quarter, St. John, V.I.; Black Rock, No. 6R Estate Hansen Bay, East End Quarter, St. John, V.I.; John George, Parcel *611 of Robert Avison, No. 6Q Estate Hansen Bay, East End Quarter, St. John, V.I.; Christian Hughes, Longbay No. 2, East End Quarter, St. John, V.I.; 7A Hansen Bay East End Quarter, St. John, V.I., Defendants.
No. CIV.A. 398/1980.
District Court, Virgin Islands, D. St. Thomas and St. John.
August 14, 2003.
Irvin A. Sewer, St. Thomas, VI, Pro se.
Maria T. Hodge, Esq., Hodge & Francois, Karl R. Percell, Esq., Desmond L. Maynard, Esq., St. Thomas, VI, for Defendants.

*612 OPINION REGARDING MOTION TO VACATE CONSENT JUDGMENT
BROTMAN, District Judge.
This Court entered a Consent Judgment in this action on June 2, 1994, to which all parties, including all claimants to the above-captioned parcels of land, with the exception of Defendant Newfound Corporation, stipulated on the record. In a subsequent Opinion and Order dated April 11, 1997, the Court denied a motion by Defendant Irvin A. Sewer, one of the parties who stipulated to the 1994 Consent Judgment, to have the entire judgment declared "null and void." See Eric Christian v. All Persons Claiming any Right, Title, or Interest in all Properties Known and Described, etc., 962 F.Supp. 676, 679-682 (D.Virgin Islands 1997) (Brotman, J.) (hereinafter referred to as the "Eric Christian Action"). Presently before the Court is Sewer's second motion to vacate the 1994 Consent Judgment. For the reasons set forth below, Sewer's motion must be denied.

I. Factual and Procedural Background
The factual and procedural history of this action is lengthy and complex and, to a large extent, not relevant to deciding the motion currently before the Court. However, to put Sewer's motion in context, the Court will briefly review some of the more significant events in the long and tortured history of this litigation.
This case was initially filed in 1980 as a probate action brought by various persons claiming status as heirs to the Estate of James George Sewer. The underlying issues in the litigation related to a dispute over the title and boundaries of several tracts of land located in the Hansen Bay and Newfound Bay Estates in the East End Quarter of St. John. The Court appointed Eric Christian as administrator to the Estate and, on December 15, 1987, he filed an action to quiet title to each of the parcels in dispute. Irvin Sewer (as representative for the Heirs of Martin Sewer), Cedrick Lewis (as administrator for the Estate of Bernard Williams), Newfound Management Corporation (a Massachusetts-based limited partnership), and various persons claiming to be the heirs of decedent Amos Sullivan, all intervened as defendants in the action.
On the eve of trial in December 1993, all of the parties, with the exception of Defendant Newfound Corporation, reached a settlement and agreed to stipulate to a judgment by consent. The Court endorsed the terms of the parties agreement and, on June 2, 1994, entered a detailed Consent Judgment which resolved a substantial portion of the issues in the quiet title action and expressly reserved jurisdiction over this matter to ensure compliance with the terms of the judgment. The provisions of the 1994 Consent Judgment relevant to Sewer's present motion awarded title two tracts of land identified as Parcel 6P Hansen Bay and Parcel 6Q Hansen Bay. With respect to Parcel 6P, the Consent Judgment provided as follows:

Parcel 6p Hansen Bay, East End Quarter, St. John, Virgin Islands, sometimes known as Long Bay # 2, and referred to in the complaint as "Christian Hughes," consisting of 4 acres as recorded, is awarded to the defendants, Estate of Bernard Williams and Irvin Sewer for the Heirs of Martin Sewer. This parcel shall be surveyed and the survey shall be subject to the mutual approval of the defendants who are awarded title thereto under this judgment, prior to recording. Defendants taking title to this parcel shall be responsible for the costs of this survey. The parties taking title to this parcel shall bear equally the costs of surveying the parcel.
*613 The portion of the Consent Judgment relating to Parcel 6Q Hansen Bay mandated that the property be "divided into 3 sections," with [t]itle to the 3 sections . . . awarded to the following parties in the following proportions:
. . . defendants, Heirs of Amos Sullivan, . . . [are] awarded 3/4 of an acre together with a one half interest in the half acre portion called "John George", and a one third interest in the remaining 1 ¾ acre portion; . . . defendant, Estate of Bernard Williams, is awarded a 1/4 interest in the half acre portion called "John George" and a one third interest in the remaining 1 ¾ acre portion; . . . [and] defendant Irvin Sewer for the Heirs of Martin Sewer, is awarded a 1/4 interest in the half acre portion called "John George" and a one third interest in the remaining 1 ¾ acre portion.
As with Parcel 6P, those parties taking title to the land agreed to share the costs of obtaining a proper survey of the property.
In a separate order, the Court severed the adverse claims of Newfound, the Estate of Bernard Williams, and Irvin Sewer, to Parcel 6P and several other disputed parcels and consolidated those claims for trial with a pending injunction/trespass action filed by Newfound on August 16, 1991. Following a two-day bench trial, and an exhaustive review of the documentary evidence and testimony presented by the parties, the Court issued a comprehensive Opinion and Order which, inter alia, reaffirmed the terms of the 1994 Consent Judgment, and quieted title to Parcel 6P in favor of Sewer and the Estate of Bernard Williams. See Newfound Management Corporation v. Irvin A. Sewer, et. al., 885 F.Supp. 727, 771-773 (D.Vi.1995). However, the Court was unable to determine 6P's precise location and boundaries, as the parties had not arranged for a proper survey of the parcel, as required by the Consent Judgment. Id. at 774. Defendants Sewer and Lewis appealed this ruling to the Third Circuit Court of Appeals, which issued a ruling on November 12, 1997, affirming the Court's opinion and remanding the action for further proceedings, including a determination of the precise location and boundaries of Parcel 6P. See Newfound Management Corporation v. Lewis, 131 F.3d 108 (3d Cir.1997).
On January 19, 1999, after conducting additional proceedings in accordance with the Third Circuit's remand order, the Court issued findings of fact and conclusions of law in which it accepted and adopted a survey map depicting the specific location and boundaries of Parcel 6P. See Newfound Management Corporation v. Sewer, 34 F.Supp.2d 305, 312-313 (D.Vi. 1999) (Brotman, J.). This survey, which was prepared by Harry Gauriloff, a licensed surveyor with extensive experience surveying disputed lands on St. Thomas and St. John, has been duly recorded with the Office of the Lieutenant Governor and designated as O.L.G. A9-532-T99. See id. at 308. Although Gauriloff's survey of Parcel 6P determined its size as approximately 7.01 acres and not the 4 acres recited in the 1994 Consent Judgment, the Court dismissed concerns about this apparent discrepancy, concluding that "[a]ny description of Parcel 6p as approximately four acres, as in the 1994 Stipulation of Entry of Consent Judgment, was included to further identify the parcel, not to define its size or boundaries." Id. at 313. Neither Sewer nor any of the other parties to the litigation appealed this ruling.
On June 5, 2001, the Court issued findings of fact and conclusions of law in the Eric Christian Action, the original quiet title action, in which it approved and adopted a survey indicating the precise location and boundaries of Parcel 6Q. See 144 F.Supp.2d 420, 437 (D.Vi.2001) (Brotman, J.). This survey, which was completed *614 on November 14, 1996 and duly filed with the Office of the Lieutenant Governor, was prepared by Edward Gibney, a registered land surveyor with considerable experience surveying property in the Virgin Islands. Id. at 424-25. As was the case with Parcel 6P, in outlining the outer boundary of Parcel 6Q, Gibney's survey determined its size to be approximately 7 acres and not the three acres reflected in the 1994 Consent Judgment.[1]Id. The Court nevertheless adopted the boundaries depicted on Gibney's survey. In doing so, the Court explicitly rejected Sewer's contention that Gibney's findings contravened the terms of the 1994 Consent Judgment. Id. at 431-33. As the Court explained, in entering into the Consent Judgment, the parties made certain . . .
. . . assumptions regarding the acreage amount based on a previous survey of Parcel 6Q, which had indicated that the parcel was three acres. This mistaken belief, however, [was] not material to the agreement itself . . . The acreage descriptions within the Consent Judgment's discussion of Parcel 6q were included to further identify the properties, not to define the parcel's size or boundaries . . . The essence of the agreement with respect to Parcel 6q was not to award a certain number of acres to the parties, but to divide the property between the three Defendants in the proportions outlined in the Consent Judgment. [Accordingly, because] [t]he specified acreage language regarding 6q merely affect[ed] a matter collateral to the division of the property . . .
the apparent discrepancy between this language and the boundaries depicted on Gibney's survey map does not constitute grounds for rescinding the parties' stipulated consent judgment. Id. at 431. Sewer appealed this ruling to the Third Circuit Court of Appeals, but the Court dismissed the appeal on August 30, 2002, after concluding that it lacked appellate jurisdiction. (See Docket Entry No. 363).
Sewer now moves this Court for an order vacating the 1994 Consent Judgment, a document which has served as the foundation for much of this litigation. His motion, which was filed on June 13, 2003, asserts two grounds for relief. Sewer first argues that this Court lacked jurisdiction to enter the 1994 Consent Judgment and cannot properly maintain jurisdiction over this matter for purposes of ensuring compliance with its terms. He also questions whether the Consent Judgment continues to be a valid and enforceable instrument. Resurrecting an argument he has raised at various points throughout these proceedings, Sewer notes that the parties, when they entered into the Consent Judgment in 1994, assumed that Parcels 6P and 6Q consisted of four acres and three acres, respectively, an assumption proven wrong by subsequent surveys approved and adopted by this Court. This "mutual mistake," he argues, constitutes grounds for rescinding or vacating the Consent Judgment, at least with respect to those two parcels. Because the Court is satisfied that it has not been divested of jurisdiction over this action, and because the substantive arguments asserted in Sewer's Motion to Vacate have not been timely raised, the Court must deny Sewer's request for relief.

*615 II. Subject Matter Jurisdiction
The scope of this Court's jurisdiction is defined by the Revised Organic Act, 48 U.S.C. §§ 1541-1645 (West 1987 & Supp. 2001), federal legislation enacted by Congress pursuant to its authority under Article IV, § 3 of the United States Constitution.[2] When it was enacted in 1954, the Act vested the District Court of the Virgin Islands with jurisdiction over the vast majority of cases filed in the territory, including not only "all causes arising under the Constitution, treaties, and laws of the United States" (i.e. federal question jurisdiction), Act of July 22, 1954, ch. 558 § 22, 68 Stat. 497, but also "all other matters in the Virgin Islands, subject [only] to the exclusive jurisdiction of the local courts over civil actions in which the amount in controversy was less than $500 and over criminal actions for local offenses in which the maximum punishment did not exceed six months in prison or a $100 fine." Club Comanche, Inc. v. Government of the Virgin Islands, 278 F.3d 250, 255 (3d Cir. 2002) (citing Callwood v. Enos, 230 F.3d 627 (3d Cir.2000)). Pursuant to § 1613 of the Act, the territorial courts shared concurrent jurisdiction with the district court over all actions to the extent jurisdiction was conferred on them by local law. Revised Organic Act of July 22, 1954, ch. 558, § 23, 68 Stat. 506 (1955) (amended 1978, 1984); Tamarind Resort Associates v. Government of the Virgin Islands, 138 F.3d 107, 113 (3d Cir.1998). Thus, in its original form, the Act established a system of concurrent jurisdiction in which the scope of the District Court's jurisdiction resembled that of "a state court of general jurisdiction [rather] than a United States district court." Carty v. Beech Aircraft Corp., 679 F.2d 1051, 1057 (3d Cir.1982).
However, in 1984, Congress amended the 1954 Revised Organic Act to impose new limits on the district court's jurisdiction over purely local civil matters. The goal of the amendments was to initiate a restructuring of the Virgin Islands judicial system which would ultimately transform the relationship between the territorial courts and the Virgin Islands district court so that it would more closely resemble the relationship between state and federal courts on the mainland. See Parrott v. Government of Virgin Islands, 230 F.3d 615, 619-620 (3d Cir.2000); Callwood, 230 F.3d at 631. To this end, the 1984 amendments "affirmatively bestow[ed] on the District Court of the Virgin Islands the entire jurisdiction of a District Court of the United States," including both federal question and diversity jurisdiction, Walker v. Government of the Virgin Islands, 230 F.3d 82, 86 (3d Cir.2000); 48 U.S.C. § 1612(a), but limited the Court's original general jurisdiction over purely local matters to those "causes . . . the jurisdiction of which is not then vested by local law in the local courts of the Virgin Islands." 48 U.S.C. § 1612(b). Amendments to section 1611(b) of the 1954 Act, in turn, authorized the Virgin Islands legislature to "vest in the courts of the Virgin Islands established *616 by local law jurisdiction over all causes in the Virgin Islands over which any court established by the Constitution and laws of the United States does not have exclusive jurisdiction." 48 U.S.C. § 1611(b). These amendments did not, ex proprio vigore[3], divest the district court of its jurisdiction over local actions; rather, the amended statute merely empowered the Virgin Islands legislature to limit the jurisdiction of the district court by taking affirmative legislative action to vest jurisdiction over local civil actions exclusively in the territorial courts. See Estate Thomas Mall, Inc. v. Territorial Court of the Virgin Islands, 923 F.2d 258, 262-63 (3d Cir.1991) (holding that divestiture under § 1612 was not intended to be "self-executing"); see also Isidor Paiewonsky Associates, Inc. v. Sharp Properties, Inc., 998 F.2d 145, 152 (3d Cir.1993) (observing that the "amended statute did not, by its own force, . . . divest the district court of [its] jurisdiction over local actions;" such divestiture "would occur only once the Virgin Islands Legislature specifically enacted legislation to vest exclusive jurisdiction over local actions in the local courts."); Parrott, 230 F.3d at 619 (observing that "[a]fter the 1984 amendments, the District Court continued to possess its statutorily granted local jurisdiction" as those amendments merely provided the territorial legislature with a "mechanism to eliminate the overlap between the District Court and the Territorial Court on local matters . . .").
The Virgin Islands legislature subsequently exercised that power on September 5, 1990, when it passed legislation, effective October 1, 1991, amending 4 V.I.C. § 76(a) and vesting the territorial courts with original jurisdiction over all local civil actions. Callwood, 230 F.3d at 631. As a result, with few exceptions, "[s]ince October 1, 1991, . . . all civil actions that are based on local law and do not satisfy diversity jurisdiction requirements must be brought in the Territorial Court of the Virgin Islands." Id.
Notwithstanding Sewer's assertions to the contrary, the territorial legislature's amendments to 4 V.I.C. § 76(a) did not have the effect of divesting the district court of jurisdiction over local civil actions filed prior to October 1, 1991, the effective date of the implementing legislation. See Isidor, 998 F.2d at 153. Indeed, the 1984 amendments to the Revised Organic Act, the source of the legislature's authority to divest the district court of jurisdiction over local civil actions, "explicitly reserved the district court's jurisdiction over cases pending on the effective date of the statute." Id. at 153. Specifically, section 703(b) of Pub.L. 98-454 provides that:
The provisions of this section shall not result in the loss of jurisdiction of the district court of the Virgin Islands over any complaint or proceeding pending in it on the day preceding the effective date of this amendatory Act . . .
In Isidor, the Court of Appeals, assessing the impact of the 1984 amendments on the district court's jurisdiction, concluded that this "congressional reservation of the district court's jurisdiction over pending cases must be interpreted to apply to all cases pending before the district court as of October 1, 1991, the effective date of the Virgin Islands Legislature's implementing legislation." Id. at 153 (emphasis added). Accordingly, this Court unquestionably retains jurisdiction over this quiet title action, as it was filed on December 15, 1987, nearly four years before the territorial legislature vested exclusive jurisdiction over local civil actions in the territorial courts. *617 See Newfound Management Corp. v. Lewis, 131 F.3d 108, 119 n. 9 (3d Cir.1997) (citing Isidor, 998 F.2d 145) (observing that the federal courts "retain jurisdiction over [the portions of this quiet title action which were consolidated with Newfound's related injunction/trespass action] because [both] suits were filed before October 1, 1991, the effective date of [4 V.I.C. § 76(a)]."). Moreover, it follows a fortiori from this conclusion that this Court had jurisdiction in 1994 to enter the Consent Judgment and has properly maintained jurisdiction over this matter for purposes of monitoring compliance with its terms. See Fox v. Consolidated Rail Corporation, 739 F.2d 929, 932 (3d Cir.1984) (observing that "it is well settled that a federal court has the inherent power to enforce and to consider challenges to settlements entered into in cases originally filed therein.") (citing Pearson v. Ecological Science Corp., 522 F.2d 171 (5th Cir.1975)); Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1371 (6th Cir.1976) ("It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them . . . even in those instances in which the court's original jurisdiction may have been questionable . . ."); see also Ryan v. Dow Chemical Co., 781 F.Supp. 902, 915 (E.D.N.Y.1991) (observing that a federal district court may properly "retain[] the power to enforce and to consider challenges to settlements entered into in cases originally filed with the court" where the terms of the settlement have been "incorporated into an order of the court"); Schulzendorf v. Pittsburgh & Lake Erie Railroad Company, 640 F.Supp. 40, 41 (W.D.Pa.1986) (a district court may properly retain jurisdiction to oversee compliance with the terms of binding settlement agreement in a case pending before it "because the court has an interest in supervising and controlling the resolution of claims properly before it."). Thus, to the extent Sewer questions whether this Court has properly exercised jurisdiction over this matter, his Motion to Vacate must be denied.

III. Sewer's Motion for Relief from the 1994 Consent Judgment
A consent judgment, or consent decree, is a "hybrid of a contract and a court order" or judgmentthat is, while it "embodies the agreement of the parties and as such is in some respects contractual in nature," it is "also in the form of a judicial order" or judgment which the parties expect will be subject to the same presumption of finality ordinarily accorded to other court orders and judgments. Holland v. New Jersey Dept. of Corrections, 246 F.3d 267, 276 (3d Cir.2001) (citing Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)); Securities and Exchange Commission v. Hatch, 128 F.R.D. 58, 60 (D.N.J.1989) (Ackerman, J.) ("[A] consent judgment is a judicial act and `possesses the same force and character as a judgment rendered following a contested trial.'") (citing Siebring v. Hansen, 346 F.2d 474, 477 (8th Cir.), cert. denied, 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352 (1965)); see also Delaware Valley Citizens' Council for Clean Air v. Pennsylvania, 674 F.2d 976, 981 (3d Cir. 1982) (citing Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir.1977)) (observing that consent decrees and consent judgments are "entitled to a presumption of finality"); Newark Branch, NAACP v. Township of West Orange, 786 F.Supp. 408, 422 (D.N.J.1992) (Lechner, J.) (same). The law, therefore, places a heavy burden on the party seeking to modify or vacate a consent judgment. See U.S. v. Wheeling-Pittsburgh Steel Corp., 818 F.2d 1077, 1088 (3d Cir.1987) (citing United States Steel Corp. v. Fraternal Ass'n of Steel Haulers, 601 F.2d 1269, 1274 (3d Cir.1979)) (observing that a "party to a consent decree [or judgment], having made a `free, calculated and deliberate choice to submit to an *618 agreed upon decree rather than seek a more favorable litigated judgment,' bears a burden which `is perhaps even more formidable than had they litigated and lost.'"); see also Hatch, 128 F.R.D. at 61 (describing the burden on a party seeking to modify or vacate a consent judgment as "extreme").
Relief under Fed.R.Civ.P. 60(b), which sets forth the standards governing a motion to modify or vacate the court's prior orders or judgments, is often described as an "extraordinary" remedy, see Moolenaar v. Government of the Virgin Islands, 822 F.2d 1342, 1346 (3d Cir.1987), available only in the truly exceptional circumstances in which "the overriding interest in the finality and repose of judgments may properly be overcome." Dietsch v. United States, 2 F.Supp.2d 627, 631 (D.N.J.1998) (citing Harris v. Martin, 834 F.2d 361, 364 (3d Cir.1987)); see also Damiano v. Sony Music Entertainment, Inc., 2000 WL 1689081 at *8 (D.N.J. Nov. 13, 2000) (Simandle, J.) (same). The Rule authorizes courts to . . .
. . . relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.
Fed.R.Civ.P. 60(b). If a movant seeks relief based on the reasons set forth in subsections (1), (2), or (3) (i.e., mistake, fraud, or newly discovered evidence), his motion must be filed "not more than one year after the judgment, order or proceeding was entered or taken." Id. All other motions under Rule 60(b), while not subject to this strict one year limitations period, are similarly time-barred if not made "within a reasonable time." Id.
Sewer's motion, which is based on his contention that the parties "mistaken" assumption about the size of Parcels 6P and 6Q renders the 1994 Consent Judgment null and void, falls under subsection (1) and is, therefore, subject to the Rule's one-year limitations period. See Stradley v. Cortez, 518 F.2d 488, 493 (3d Cir.1975); see also Christian, 962 F.Supp. at 680 (observing that Sewer's previous motion to vacate the 1994 Consent Judgment based on a variety of alleged "mistake[s] relating to his understanding of the terms of the settlement" was subject to Rule 60(b)'s one year limitation). Because the motion was filed more than 9 years after entry of the Consent Judgment, it is clearly time-barred. Accordingly, because Rule 60(b)'s "one limitation is mandatory and cannot be enlarged by the court," Catasauqua Area School Dist. v. Eagle-Picher Industries, Inc., 118 F.R.D. 566, 569 (E.D.Pa.1988), Sewer's Motion to Vacate must be dismissed as untimely.[4]

*619 IV. Conclusion
Accordingly, because the Court concludes that the 1984 Amendments to the Revised Organic Act and the territorial legislature's subsequent amendments to 4 V.I.C. 76(a) did not divest this Court of jurisdiction over this matter, and because Sewer's attempt to seek relief from the 1994 Consent Judgment is barred by Rule 60(b)'s one year limitations period, the Court must deny his Motion to Vacate. The Court will issue an appropriate order.

ORDER DENYING DEFENDANT IRVIN A. SEWER'S MOTION TO VACATE CONSENT JUDGMENT
THIS MATTER having come before the Court on Defendant Irvin A. Sewer's Motion to Vacate Consent Judgment;
The Court having considered the submissions of the parties; and
For the reasons set forth in the Court's opinion of this date;
IT IS on this 14th day of August, 2003, HEREBY
ORDERED that Defendant Irvin A. Sewer's Motion to Vacate the Consent Judgment which this Court entered in this matter on June 2, 1994, is DENIED.
NOTES
[1] Under the terms of the Consent Judgment, the Heirs of Amos Sullivan were awarded a 3/4 acre portion of 6Q outright, a one half interest in the half acre portion called "John George," and a one third interest in "the remaining 1 ¾ acre portion." The Estate of Bernard Williams was awarded a 1/4 interest in "John George" and a one third interest in the remaining 1 ¾ acre portion. Irvin Sewer for the Heirs of Martin Sewer was awarded a 1/4 interest in "John George" and a one third interest in the remaining 1 ¾ acre portion. When the described acreage is added together, it amounts to a total of three acres.
[2] Article IV, § 3 of the U.S. Constitution authorizes Congress to make "all needful Rules and Regulations respecting the Territory or other Property belonging to the United States," including the United States Virgin Islands. U.S. Const. art. IV, § 3, cl. 2; see also Brow v. Farrelly, 994 F.2d 1027, 1032 (3d Cir.1993). The Revised Organic Act, passed in 1954 pursuant to this constitutional grant of authority, created a comprehensive framework for the legislative, executive, and judicial branches of the Virgin Islands government, which defined the relationship between the three branches and the nature and extent of their respective powers and obligations. See Virgo Corp. v. Paiewonsky, 384 F.2d 569, 576 (3d Cir.1967). Thus, the Act, which is often described as "the Virgin Islands equivalent of a constitution," essentially operates as the "basic charter of government for the territory." Brow, 994 F.2d at 1032.
[3] "Ex proprio vigore" means "by its own force." Black's Law Dictionary 522 (5th ed.1979).
[4] Sewer cannot circumvent the strict limitations period imposed on motions brought pursuant to subsection (1) by invoking the open-ended, catch-all provision set forth in subsection (6). Relief under Rule 60(b)(6) is available "only when the relief sought is based upon `any other reason' than a reason which [might] warrant relief under 60(b)(1)-(5)." Stradley, 518 F.2d at 493 (citing Federal Deposit Insurance Corp. v. Alker, 234 F.2d 113, 116-17 n. 5 (3d Cir.1956)); see also Hatch, 128 F.R.D. at 61 (observing that relief under "Rule 60(b)(6) is only available where subsections (1) through (5) do not apply"). Furthermore, while relief under subsections (3) through (6) is not limited by any strictly defined time period, motions brought under those sections will only be considered if filed "within a reasonable time" after the entry of judgment. Sewer's motion, which comes more than two years after this Court determined the boundaries of Parcel 6Q and over four years after this Court adopted Gauriloff's survey depicting the boundaries and size of Parcel 6P, has clearly not been filed in a timely manner. See, e.g., Moolenaar, 822 F.2d at 1348 (dismissing Rule 60(b)(6) as untimely where plaintiffs sought relief "almost two years after the district court's initial judgment").