In re **MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, Cecil R. "Cap" Chesser, Margaret McCluskey, Bill Corbellini, and Dwight Emanuelson, Jr., Relators.**

**Merrill Lynch, Pierce, Fenner & Smith, Incorporated, Cecil R. "Cap" Chesser, Margaret McCluskey, Bill Corbellini, and Dwight Emanuelson, Jr., Appellants,**

v.

**Lockey Investment Group, L.L.C., Appellee.**

No. 05–04–00700–CV.

Court of Appeals of Texas, Dallas.

June 27, 2006.

Charles A. Gall, Robert Gilbreath, Jenkens & Gilchrist, P.C., Dallas, for appellants.

Roger Evans, Mathis & Donheiser, P.C., Dallas, for appellee.

Before Justices MOSELEY, BRIDGES, and FRANCIS.

## OPINION

Opinion by Justice MOSELEY.

In this consolidated proceeding, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Cecil R. "Cap" Chesser, Margaret McCluskey, Bill Corbellini, and Dwight Emanuelson, Jr. (Merrill Lynch) bring a petition for writ of mandamus and an interlocutory appeal complaining of the trial court's order denying their motion to compel arbitration and/or stay proceedings. For the reasons below, we resolve Merrill Lynch's issues against it, deny the petition for writ of mandamus, and dismiss the interlocutory appeal for lack of jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The issues here involve the employment history of two individuals, Brion Randall and Tommy Irby, with Merrill Lynch and Lockey Investment Group, L.L.C. (Lockey Investment). While employed with Merrill Lynch, Randall, a financial consultant, and Irby, a stock broker, signed a Uniform Application for Securities Industry Registration or Transfer (a Form U–4), which is used to register securities professionals with various securities exchanges and associations. Randall's and Irby's Form U–4s contained the following arbitration clause:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgement in any court of competent jurisdiction.

On the Form U–4s, item 10 included the National Association of Securities Dealers (NASD) and the New York Stock Exchange (NYSE).

Merrill Lynch discharged Randall in March 2002. In June 2002, Randall and Curtis M. Lockey, Jr. founded Lockey Investment. Randall served as president until he resigned in September 2003. Irby

left Merrill Lynch and was hired by Lockey Investment in April 2003.

In April 2003, Randall initiated an arbitration proceeding against Merrill Lynch. Randall asserted that certain Merrill Lynch individuals "question[ed] his business reputation" and that Merrill Lynch recorded false statements on his Form U–5 termination notice.[1] Randall alleged that Merrill Lynch "disparag[ed]" him to his former clients and, "due to this deliberately erroneous and false information spread by Merrill Lynch," he could not "find suitable employment in his chosen profession, and although he started his own money management firm, he finds it difficult to rebuild his client base." Randall summarized his claims against Merrill Lynch as follows: "Merrill Lynch and the individual respondents engaged in a campaign of fraud, slander, and libel against Brion Randall, which led to his eventual termination from Merrill Lynch, and severe damage to his good name and business reputation."

Also in April 2003, Merrill Lynch instituted an NASD arbitration proceeding against Irby and Lockey Investment based on their alleged misuse of Merrill Lynch's confidential information. The NASD dismissed Lockey Investment because it "is not compelled by the Rules of NASD Dispute Resolution to arbitrate disputes with . . . [Merrill Lynch] in this forum" and because Lockey Investment did not submit voluntarily to the NASD Dispute Resolution's jurisdiction. The disputes between Irby and Merrill Lynch were settled.

In December 2003, Lockey Investment filed this suit against Merrill Lynch and some of its managers and officers, asserting claims for business disparagement, defamation, slander, libel, conspiracy, and tortious interference with existing and prospective contractual relationships. The claims were based on false statements Merrill Lynch allegedly made about Lockey Investment's "principals," Randall and Irby, including untruthful statements on Randall's U–4 and U–5. Lockey Investment asserted that, as a result of those statements, it had lost potential customers, including Randall's and Irby's former customers. Further, unlike damages Randall and Irby would sustain as individuals, Lockey Investment also alleged that Merrill Lynch "engaged in a concerted campaign to drive [Lockey Investment] out of business."

Merrill Lynch moved to compel arbitration and/or stay proceedings. It argued Lockey Investment's claims should be arbitrated because: (1) Randall and Irby "were attempting to avoid arbitration by bringing their claims in the name of Lockey Investment, a company they own, rather than their own names"; (2) Randall and Irby, not Lockey Investment, were the subject of the allegedly defamatory statements; and (3) "these claims must be arbitrated pursuant to the agreement between Randall and Irby and Merrill Lynch." Merrill Lynch also argued that, even if Lockey Investment had a claim against Merrill Lynch, Lockey Investment was equitably estopped to avoid arbitration pursuant to *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir.2000).

In the alternative, Merrill Lynch argued the case should be stayed pursuant to section 3 of title 9 of the United States Code and section 171.084 of the Texas Civil Practice and Remedies Code. Relying primarily on a federal district court opinion from Nebraska, *Cybertek, Inc. v. Bentley*

---

1. Randall named three Merrill Lynch employees who are also named as defendants in this suit—Emanuelson, McCluskey, and Chesser—and three other Merrill Lynch employees—David Jennings, Andrea Klingenberg, and Richard J. Valentine.

*Systems, Inc.,* 182 F.Supp.2d 864 (D.Neb. 2002), Merrill Lynch argued that: (1) "arbitration would be thwarted if a corporation were allowed to pursue claims in court essentially identical to the claims of its owners"; (2) the litigation involved common questions of fact that were within the scope of the arbitration agreement; and (3) all defendants were entitled to the benefit of the arbitration agreements that they had "with the real plaintiffs in this case," Irby and Randall.

Lockey Investment responded to Merrill Lynch's motion to compel and offered the affidavit of Curtis M. Lockey, Jr., chief executive officer, president, and secretary of Lockey Investment. In his affidavit, Mr. Lockey addressed the relationships between Lockey Investment and Randall and Irby.

As to Randall, the affidavit stated that, although Randall had held a twenty percent ownership interest in Lockey Investment and had served as its president and treasurer, he resigned and relinquished his ownership interest effective September 1, 2003; Randall had not been an owner, officer, director, or employee of Lockey Investment since August 31, 2003; Randall did not control the prosecution of Lockey Investment's suit against Merrill Lynch; and Randall did not have a financial interest in any recovery Lockey Investment might obtain through its suit.

As to Irby, the affidavit stated that Lockey Investment hired Irby in April 2003; Irby served as Lockey Investment's senior vice president of investments and its compliance officer; Irby never had an ownership interest in Lockey Investment; Irby did not control prosecution of Lockey Investment's suit against Merrill Lynch; and Irby did not have a financial interest in any recovery Lockey Investment might obtain through its suit.

After a hearing, the trial court orally made an "interim ruling" denying Merrill Lynch's motion to compel. The parties stipulated to certain facts: (1) Randall was not employed by, or affiliated with, Lockey Investment when this suit was filed; (2) after Randall resigned from Lockey Investment he worked as an independent consultant for Lockey Capital, L.P.; (3) Lockey Capital, L.P. was an entity separate and distinct from Lockey Investment; (4) neither entity had any ownership interest in the other; and (5) Lockey Capital, L.P. did not have any right of control over the prosecution of the suit and had no financial or other interest in the outcome of the suit.

Subsequently, the trial court heard the motion to stay, after which it signed an order denying Merrill Lynch's motion to compel arbitration and/or stay proceeding. This is the order that is the subject of Merrill Lynch's appeal and petition for writ of mandamus.

## II. MANDAMUS OR APPEAL

The appropriate avenue for relief for denial of arbitration under the Texas General Arbitration Act (TAA) is an interlocutory appeal, whereas the appropriate avenue for relief for denial of arbitration under the Federal Arbitration Act (FAA) is a petition for mandamus. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272 (Tex. 1992); *see* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–.098 (Vernon 2005); 9 U.S.C.A. §§ 1–16 (West 1999). Therefore, to determine the proper procedural posture of this dispute, we must first determine whether the FAA or the TAA applies.

Under the Supremacy Clause of United States Constitution, the FAA preempts all otherwise applicable state laws, including the TAA, to the extent they are inconsistent with that Act. *Jack B. Anglin Co.,* 842 S.W.2d at 271; *In re*

*Merrill Lynch, Pierce, Fenner & Smith Inc.,* 131 S.W.3d 709, 712 (Tex.App.-Dallas 2004, orig. proceeding). The FAA applies to contracts "evidencing a transaction involving commerce." *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 131 S.W.3d at 712 (quoting 9 U.S.C.A. § 2). Whether a particular arbitration agreement is controlled by the FAA is determined by whether the contract relates to interstate commerce. *Id.*

■ The Form U–4s, upon which Merrill Lynch bases its motion to compel arbitration, did not refer to either the TAA or the FAA. However, a Form U–4 is a separate contract involving the sale of securities, and its arbitration clause is enforceable under the FAA. *Wachovia Sec., LLC v. Emery,* 186 S.W.3d 107, 112 (Tex. App.-Houston [1st Dist.] 2005, orig. proceeding); *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 131 S.W.3d at 712 (citing *In re Scott,* 100 S.W.3d 575, 579 (Tex.App.-Fort Worth 2003, orig. proceeding), and *Williams v. Cigna Fin. Advisors, Inc.,* 56 F.3d 656, 659–60 (5th Cir.1995)). Accordingly, we dismiss Merrill Lynch's interlocutory appeal for lack of jurisdiction and consider Merrill Lynch's petition for mandamus.

## III. STANDARD OF REVIEW

■ Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law. *In re Merrill Lynch, Pierce, Fenner & Smith Inc.,* 131 S.W.3d at 712 (citing *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding)). Thus, evaluating whether mandamus relief should be granted requires that we determine whether there has been a clear abuse of discretion by the trial judge and whether an adequate appellate remedy exists. *Id.*

## IV. DENIAL OF MOTION TO COMPEL ARBITRATION

In its second issue, Merrill Lynch contends the trial court abused its discretion by refusing to compel arbitration. The thrust of Merrill Lynch's argument is that this lawsuit, by asserting the same claims as in Randall's arbitration, "is an attempt by Randall and Irby to avoid their obligations to arbitrate their disputes with Merrill Lynch by bringing claims through Lockey [Investment]." Lockey Investment contends that it did not sign the Form U–4s and cannot be compelled to arbitrate because it did not agree to do so.

### A. Applicable Law

Section 4 of the FAA provides in part that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C.A. § 4 (West 1999).

■ A party seeking to compel arbitration must first establish the existence of an arbitration agreement subject to the FAA and show that the claims raised fall within the scope of that agreement. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex.2005) (orig. proceeding); *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex.1999). The Texas Supreme Court has held that doubts regarding an agreement's scope are resolved in favor of arbitration because there is a presumption favoring agreements to arbitrate under the FAA. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d at 737. However, "the purpose of the FAA was to make arbitration agreements as enforceable as other contracts, not more so." *Id.* at 737–38. Thus, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration

agreement exists. *Id.* "Because arbitration is contractual in nature, the FAA generally 'does not require parties to arbitrate when they have not agreed to do so.'" *Id.* at 738 (citation omitted). However, nonsignatories may be bound to arbitration agreements under six theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third-party beneficiary. *Id.* at 739.

## B. Discussion

### 1. Equitable Estoppel

First, relying primarily on *Grigson*, 210 F.3d at 527–28, Merrill Lynch argues that Lockey Investment should be compelled to arbitrate under the doctrine of equitable estoppel. In *Grigson*, the Fifth Circuit discussed the equitable estoppel doctrine, outlining the "limited instances" in which "a non[-]signatory-to-an-arbitration-agreement-defendant can nevertheless compel arbitration against a signatory-plaintiff." *Grigson*, 210 F.3d at 526. It noted that the "lynchpin for equitable estoppel is equity—fairness." *Id.* at 528. A signatory may not "have it both ways," that is, "it cannot on the one hand seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Id.*

▮ According to *Grigson*, equitable estoppel allows a non-signatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory. "When each of a signatory's claims against a non[-]signatory makes reference to or presumes the existence of the written

agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Id.* at 527 (citation omitted). Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract. *Id.* (citation omitted); *see Merrill Lynch Trust Co. FSB v. Alaniz*, 159 S.W.3d 162, 170–71 (Tex.App.-Corpus Christi 2004, orig. proceeding); *Meyer v. WMCO–GP, L.L.C.*, 126 S.W.3d 313, 316–17 (Tex.App.-Beaumont 2004, pet. granted); *McMillan v. Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 477, 482–83 (Tex.App.-Dallas 2001, orig. proceeding). Otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted. *Grigson*, 210 F.3d at 527 (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999)).

▮ As explained by the Fifth Circuit in a subsequent case, *Grigson* held that a signatory plaintiff was estopped from relying upon the defendants' status as non-signatories to prevent the defendants from compelling arbitration under the agreement. *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 360 (5th Cir. 2003). Thus, the *Grigson* version of estoppel applies to prevent "a *signatory* from avoiding arbitration with a non[-]signatory when the issues the *non[-]signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.*" *Id.* at 361 (quoting *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)). "[B]ecause arbitration is guided by contract principles, the reverse is not also true: a signatory may not estop a

non[-]signatory from avoiding arbitration regardless of how closely affiliated the non[-]signatory is with another signing party." *Id.* (quoting *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC,* 268 F.3d 58, 62 (2d Cir.2001)).

The case before us is distinguishable from *Grigson* because here the party seeking to compel arbitration, Merrill Lynch, is a signatory-defendant, not the "non-signatory-to-an-arbitration-agreement-defendant" as in *Grigson.* Accordingly, the postures of Merrill Lynch and Lockey Investment in the present case are reversed from the postures of the parties in *Grigson. See id.* Thus the analysis in *Grigson* does not compel arbitration here.

Next, Merrill Lynch argues that other courts, without characterizing their decisions as equitable estoppel, have enforced arbitration agreements against non-signatory parties where the interests of such parties are directly related to, if not congruent with, those of a signatory. In support of this argument, Merrill Lynch relies on *Isidor Paiewonsky Associates, Inc. v. Sharp Properties, Inc.,* 998 F.2d 145, 155 (3rd Cir.1993). There, a property owner obtained an arbitration award against its "head" (or direct) tenant and sought to enforce the award against a subtenant, who was not a party to the arbitration proceedings and sought continued possession. The Third Circuit Court of Appeals concluded that, under landlord-tenant law, the interest of the subtenant in the property could not exceed that of the head tenant because the subtenant's interests were "strictly derivative" of those of the head tenant. *Id.* at 154. Accordingly, because the subtenant's and head tenant's interests were "directly related, if not in fact congruent," the court concluded that the head tenant protected its subtenant's interest in the arbitration proceedings. *Id.* at 155.

Accordingly, the arbitration decision was enforced against the subtenant.

In support of its argument under *Isidor Paiewonsky Associates, Inc.,* Merrill Lynch asserts that "Randall was a co-founder of Lockey [Investment] and maintains authority to act as a manager of the company." Merrill Lynch bases its position on Lockey Investment's 2002 Articles of Organization and Articles of Amendment, which listed Randall as a manager. Merrill Lynch also argues that Irby is "Senior Vice President" of Lockey Investment. However, Mr. Lockey's affidavit and the stipulations show that neither Randall nor Irby owned or controlled Lockey Investment when this suit was filed in December 2003. Even considering the former relationships between Lockey Investment and Randall (as manager) and Irby (as an officer), Lockey Investment's interests are not "strictly derivative" of Randall's and Irby's interests, as are the interests of a subtenant to a head tenant. Accordingly, the logic of *Isidor Paiewonsky Associates, Inc.* does not compel arbitration here.

Lastly, under its equitable estoppel argument, Merrill Lynch argues Lockey Investment must arbitrate its claims because they are "derivative of Randall's claims in the arbitration." Merrill Lynch relies on *Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.,* 293 F.3d 1023, 1029 (7th Cir. 2002). In that case, the court determined that the claims of a non-signatory corporate entity—Kidde—"were derivative of" the claims of the signatory corporate entity—Fyrnetics—"because Kidde was Fyrnetics' successor." According to the court, Kidde "caused Fyrnetics to be merged into Kidde and then dissolved" and then "voluntarily assumed the obligation of Fyrnetics' [agreement containing the arbitration provision]." Because Randall's relationship with Lockey Investment and Lockey

Capital, L.P. is unlike the Kidde/Fyrnetics corporate merger described above, Lockey Investment's claims are not "derivative of" Randall's claims in the arbitration. Accordingly, the analysis in *Fyrnetics (Hong Kong) Ltd.* does not compel arbitration here.

### 2. Direct Benefits Estoppel

■ Under Texas law, a non-signatory plaintiff may be compelled to arbitrate if its claims are "based on a contract" containing an agreement to arbitrate. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739 (citing *Bridas*, 345 F.3d at 361–62); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755–56 (Tex.2001) (orig. proceeding). Thus, under "direct benefits estoppel," a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739; *Sw. Tex. Pathology Assocs., L.L.P. v. Roosth*, 27 S.W.3d 204, 208 (Tex.App.-San Antonio 2000, pet. dism'd w.o.j.); *Merrill Lynch, Pierce, Fenner & Smith v. Eddings*, 838 S.W.2d 874, 879 (Tex.App.-Waco 1992, writ denied). Under its second issue, Merrill Lynch argues that it was entitled to arbitration because Lockey Investment's claims are based in part on Randall's U-4, which contains an arbitration provision.[2]

■ In its reply brief, Merrill Lynch expands on this argument, directing our attention to *In re Weekley Homes, L.P.*, which held that, under the concept of "direct benefits estoppel," a non-signatory to an arbitration agreement may be compelled to arbitrate "if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provisions." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex.2005) (orig. proceeding) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 741). The direct benefits estoppel analysis focuses on the nonparty's conduct during the performance of the contract. *In re Weekley Homes, L.P.*, 180 S.W.3d at 132–33.

■ In order to be compelled to arbitrate under an agreement to which it was not a party, the non-signatory must be "seeking the benefits" of the Form U–4 (or the U–5) by seeking to enforce its terms. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739. Thus, if the non-signatory's claims can stand independently of the underlying contract, then arbitration generally should not be compelled under this theory. *See id.*

Here, however, Merrill Lynch does not explain what direct benefits Lockey Investment is seeking from Randall's Form U–4 agreement with Merrill Lynch. On their face, Lockey Investment's allegations identify the location of Merrill Lynch's alleged false statements as being set forth in the U–4 and/or the U–5, and do not seek to benefit from or enforce the contractual obligations set forth in those documents. Thus, Lockey Investment's claims "stand independently" of the Form U–4 or the U–5. *See id.* We reject Merrill Lynch's argument that direct benefits estoppel requires Lockey Investment to arbitrate its claims against Merrill Lynch. *See id.; see also In re Weekley Homes, L.P.*, 180 S.W.3d at 132–33.

### 3. Agency or Alter Ego/Veil Piercing

Merrill Lynch also argues that, "by orchestrating the underlying lawsuit in

---

**2.** Merrill Lynch quotes Lockey Investment's original petition: "[Merrill Lynch] also maliciously and intentionally published untruthful statements on Brion Randall's U–4 . . . ." Although not quoted by Merrill Lynch, the allegation also includes statements made on Randall's U–5 termination notice.

Lockey [Investment]'s name," Randall and Irby are "attempting to avoid their obligation to arbitrate claims against Merrill Lynch." Accordingly, we construe Merrill Lynch's argument to be that Lockey Investment should be compelled to arbitrate by virtue of its relationship with Randall and Irby under a theory such as agency or alter ego/veil piercing. It is undisputed that Lockey Investment was not in existence when Randall and Irby signed the Form U–4s, and therefore Randall and Irby could not have been acting as agents of Lockey Investment in signing the Form U–4s. *See Thomson–CSF, S.A.*, 64 F.3d at 777; *McMillan,* 66 S.W.3d at 480–81; *Di Giammatteo v. Olney,* 794 S.W.2d 103, 104–05 (Tex.App.-Dallas 1990, no writ). The record also supports the conclusion that Lockey Investment is not acting as the agent of Randall and Irby in bringing suit against Merrill Lynch. Lastly, Merrill Lynch put forward no evidence to support an alter ego/veil piercing theory. *See Thomson–CSF, S.A.*, 64 F.3d at 777–78; *see also Mohamed v. Auto Nation USA Corp.,* 89 S.W.3d 830, 836 (Tex.App.-Houston [1st Dist.] 2002, no writ) (party seeking to compel arbitration has burden to show it had the right to enforce the agreement and burden is generally evidentiary). Therefore, we reject Merrill Lynch's arguments that Lockey Investment must arbitrate its claims based on this theory.

### 4. Public Policy

In addition, Merrill Lynch argues that the strong public policy in favor of arbitration supports its position. Again, the strong presumption favoring arbitration does not arise until a person seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003). Because there is no valid arbitration agreement between Merrill Lynch and Lockey Investment, the strong public poli-

cy in favor of arbitration is not applicable here.

Because we have rejected Merrill Lynch's arguments that the trial court abused its discretion in denying Merrill Lynch's motion to compel arbitration, we resolve Merrill Lynch's second issue against it.

## V. DENIAL OF MOTION TO STAY PROCEEDINGS

In its first issue, Merrill Lynch contends that the trial court abused its discretion in refusing to stay the underlying case. Merrill Lynch argues, in part, that the litigation will have a critical impact on the arbitration. After submission, counsel for Merrill Lynch sent a letter stating, in part, that "Appellants/Relators are seeking relief from the trial court's refusal to stay Lockey Investment Group [L.L.C.]'s claims against them during the pendency of a related arbitration proceeding—*Randall v. Merrill Lynch, Pierce, Fenner & Smith, et al.*" and that "[t]he claims in that arbitration proceeding have now been settled." We conclude Merrill Lynch's first issue relating to the stay is moot, and we need not address it.

## VI. CONCLUSION

Having rejected Merrill Lynch's arguments that the trial court abused its discretion in denying its motion to compel arbitration and/or stay proceeding, we deny Merrill Lynch's petition for writ of mandamus.