Petition for Writ of Mandamus Granted; Appeal Dismissed and Opinion
filed December 9, 2008








 

Petition
for Writ of Mandamus Granted;
Appeal Dismissed and Opinion filed December 9, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00408-CV

____________

 

IN RE STANFORD GROUP COMPANY

 



 

ORIGINAL PROCEEDING 

WRIT OF MANDAMUS

 



____________

 

NO. 14-08-00415-CV

____________

 

STANFORD GROUP COMPANY, Appellant

 

V.

 

D. MARK TIDWELL AND CHARLES W. RAWL, Appellees

 



 

On Appeal from the 189th
Judicial District

Harris County, Texas

Trial Court Cause No. 2008-05203

 



 

O P I N I O N

In this matter, we have consolidated a petition for writ of
mandamus with an interlocutory appeal.  In both proceedings, appellant/relator,
Stanford Group Company (AStanford Group@), challenges the
trial court=s order denying its motion to compel arbitration
against appellees/real parties in interest, D. Mark Tidwell and Charles W. Rawl
(ATidwell and Rawl@).  Stanford Group
argues that the trial court improperly denied its motion to compel
arbitration.  We dismiss the interlocutory appeal for want of jurisdiction and
conditionally grant the petition for writ of mandamus.

I.  BACKGROUND

Tidwell and Rawl were employed by Stanford Group as
financial advisors.  In connection with their employment, Tidwell and Rawl each
signed a Uniform Application for Securities Industry Registration or Transfer (AForm U-4@), which is used
to register securities professionals with various securities exchanges and
organizations.  The Form U-4 contained an arbitration clause requiring Tidwell
and Rawl to Aarbitrate any dispute, claim or controversy . . .
between [Tidwell or Rawl] and [Stanford Group] . . . that is required to be
arbitrated under the rules . . . of the [Self-Regulatory Organizations]
indicated in Section 4 . . . .@  Section 4 included the National
Association of Securities Dealers (ANASD@).[1] 
Additionally, Tidwell and Rawl executed various promissory notes payable to
Stanford Group.  The promissory notes contained an arbitration clause mandating
arbitration of Aany controversy arising out of or relating
to@ the notes. 








Tidwell and Rawl alleged that during their employment, they
learned that Stanford Group was engaging in various unethical and illegal
business practices, including overstating the asset value of individuals in a
manner designed to mislead potential investors and purging electronic data from
its computers in response to an investigation by the Securities Exchange
Commission.  Tidwell and Rawl allege that although they encouraged management
to investigate and correct these practices, they were ignored.  According to
Tidwell and Rawl, they left the company after realizing that they could
possibly be implicated in the alleged illegal acts.[2] 


The following month, Stanford Group initiated FINRA
arbitration proceedings against Tidwell and Rawl to collect on the promissory
notes.  Stanford Group alleged that Tidwell and Rawl still owed money on the
notes when their employment ended, and that the notes became immediately due
and payable upon their departure from the company.  Tidwell and Rawl filed
answers and asserted various defenses in the FINRA arbitration proceedings.  








Weeks after the FINRA arbitration on the promissory notes
commenced, Tidwell and Rawl filed an employment discrimination suit in state
court, alleging that they were constructively discharged by Stanford Group in
violation of the Texas Labor Code.  Specifically, Tidwell and Rawl contended in
their first amended petition that they were constructively discharged by
Stanford Group for refusing to engage in Stanford Group=s unethical and
illegal business practices.  These alleged illegal practices include Stanford
Group=s: (1) prohibiting
its financial advisors from filing mandatory securities forms for clients
possessing IRA accounts containing Stanford International Bank, Ltd.
certificates of deposit; (2) neglecting to notify holders of such IRA accounts
of the civil and criminal penalties associated with the failure to file the
mandatory securities forms; (3) violating FINRA regulations by overstating the
asset value of individuals in a manner designed to mislead potential investors;
(4) ordering the removal or destruction of information contained in client or
company files in response to an ongoing SEC investigation into Stanford Group=s certificate of
deposit sales practices; and (5) purging electronic data from its computers in
response to the SEC investigation.  Tidwell and Rawl alleged that after they
refused to engage and participate in these illegal practices, Stanford Group
forced them out of the company.  They further contended that Stanford Group=s conduct is
actionable under Sabine Pilot Servs., Inc. v. Hauck. 687 S.W.2d 733
(Tex. 1985). 

Stanford Group answered the employment suit with a motion
to compel arbitration, contending that the Form U-4 arbitration agreements
require the employment claims to be arbitrated.  Tidwell and Rawl responded to
the motion to compel by insisting that their employment claims were excluded
from arbitration under FINRA rule 13201.  Rule 13201, titled AStatutory
Employment Discrimination Claims,@ provides:

A claim alleging employment
discrimination, including sexual harassment, in violation of a statute, is not
required to be arbitrated under the Code.  Such a claim may be arbitrated only
if the parties have agreed to arbitrate it, either before or after the dispute
arose.  If the parties agree to arbitrate such a claim, the claim will be
administered under Rule 13802.    

Tidwell and Rawl argued that, despite the broad Form U-4
arbitration clauses, rule 13201 authorized their employment claims to be
prosecuted in state court.  They further argued that FINRA=s limitations on
discovery rendered arbitration an inappropriate forum in which to litigate the
employment matter.[3] 
Replying to Tidwell and Rawl=s rule 13201 exclusion argument, Stanford
Group contended that rule 13201 permits a claim to be excluded from arbitration
only if it is a statutory employment claim.  Stanford Group argued that
because Tidwell and Rawl=s constructive discharge claim was a
judicial cause of action created by the Texas Supreme Court in Sabine Pilot,
rule 13201 was not applicable, and arbitration of their employment claim was
required. 








Following a hearing, the trial court denied Stanford Group=s motion to compel
arbitration.  In dual proceedings, Stanford Group now challenges the trial
court=s order denying
its motion to compel arbitration by way of interlocutory appeal and petition
for writ of mandamus; we have consolidated the two proceedings into one
appeal.  In this consolidated matter, the parties dispute only the scope of the
arbitration clauses, that is, whether Tidwell and Rawl=s constructive
discharge claims are covered by the Form U-4 arbitration agreements.

II.  APPLICABLE ARBITRATION ACT

The Texas General Arbitration Act (ATAA@) and the Federal
Arbitration Act (A FAA@) provide
alternative procedural vehicles for relief.  In re Weeks Marine, Inc., 242 S.W.3d 849, 853 (Tex. App.CHouston [14th Dist.] 2007, orig.
proceeding).  If the trial court denies arbitration based on the TAA, the order
is subject to interlocutory appeal.  Tex. Civ. Prac. & Rem. Code ' 171.098(a)(1). 
Relief from a denial of arbitration under the FAA, however, must be pursued by
mandamus.  In re Poly-America, L.P., 262 S.W.3d 337, 345 (Tex. 2008)
(orig. proceeding).  Thus, as a threshold matter, we must determine which
arbitration act applies.  

Under the Supremacy Clause, the FAA preempts otherwise
applicable state laws, including the TAA.  Jack B. Anglin, Co., Inc. v.
Tipps, 842 S.W.2d 226, 271 (Tex. 1992).  The FAA applies to all disputes in state or federal courts
arising out of a Acontract evidencing a transaction
involving commerce if the contract affects interstate commerce.@  Allied-Bruce
Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 276-77 (1995);
Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp., 140 S.W.3d 879,
883 (Tex. App.CHouston [14th Dist.] 2004, no pet.).  ACommerce@ is construed
broadly and encompasses all contracts relating to interstate commerce.  In
re Tenet Healthcare, Ltd., 84 S.W.3d 760, 765 (Tex. App.CHouston [1st Dist.] 2002, orig.
proceeding).  








The trial court proceedings in this case involve an
employment dispute in the securities industry, partially governed by the Form
U-4 arbitration agreements.  The Form U-4 agreements arise in interstate
commerce, and they involve the sale of securities.  In re Merrill Lynch,
Pierce, Fenner & Smith, Inc., 195 S.W.3d 807, 813 (Tex. App.CDallas 2006, orig.
proceeding) (concluding that a Form U-4 is a contract involving the sale of
securities).  The sale of securities has been held to involve interstate
commerce.  See id.; Williams v. Cigna Fin. Advisors, Inc., 56 F.3d 656, 659 (5th Cir. 1995)
(reasoning that U-4 registration involved interstate commerce because it was a
contract involving sale of securities); Eurocapital Group., Ltd. v. Goldman
Sachs & Co., 17 S.W.3d 426, 430 (Tex. App.CHouston [1st Dist.] 2000, no pet.) (recognizing that account
agreement concerning sale of securities involved interstate commerce).  Furthermore,
Texas courts have consistently found that the Form U-4 is a contract involving
interstate commerce and that its arbitration clause is enforceable under the
FAA.  In re Merrill Lynch, 195 S.W.3d at 813; Wachovia Sec., LLC v. Emery, 186 S.W.3d 107, 112 (Tex. App.CHouston [1st Dist.] 2005, no pet.); In re Merrill
Lynch, Pierce, Fenner & Smith, Inc., 131 S.W.3d 709, 712 (Tex. App.CDallas 2004, orig. proceeding); In
re Scott, 100 S.W.3d 575, 579 (Tex. App.CFort Worth 2003, orig. proceeding). 
Because the Form U-4 is a contract involving the sale of securities and the
sale of securities involves interstate commerce, we conclude that the FAA
applies.  

Having determined
that the FAA applies, mandamus, not an interlocutory appeal, is the procedural
vehicle for relief requested by Stanford Group.  See In re Poly-America,
262 S.W.3d at 345.  Accordingly, we dismiss Stanford Group=s interlocutory appeal and consider
the merits of its petition for writ of mandamus.  We now turn to the substance of
Stanford Group=s complaint.  








III.  PETITION FOR WRIT OF MANDAMUS  

A.  Standard of Review

Mandamus is an extraordinary remedy that will issue only to
correct a clear abuse of discretion when there is no adequate appellate remedy
at law.  In re
H&R Block Fin. Advisors, Inc., 262 S.W.3d 896, 899 (Tex. App.CHouston [14th Dist.] 2008, orig.
proceeding).  An abuse of discretion occurs if the trial court=s decision is so arbitrary and
unreasonable as to constitute a clear and prejudicial error of law.  See id. 
A trial court has no discretion in determining what the law is and on applying
the law to the facts.  AutoNation USA Corp. v. Leroy, 105 S.W.3d 190,
195 (Tex. App.CHouston [14th Dist.] 2003, orig. proceeding).  The trial court=s failure to analyze or apply the law
correctly is an abuse of discretion.  Id.  

Because
a trial court cannot abuse its discretion in reaching a correct result for the
wrong reasons, we will uphold the trial court=s order on any ground supported by
the record.  Id.  The relator must establish that the facts of the case
and controlling law permitted the trial court to make but one decision.  Johnson
v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig.
proceeding).  In reviewing a denial of a motion to compel arbitration, we
review the factual conclusions under a legal sufficiency or Ano evidence@ standard and legal conclusions de
novo.  McReynolds v. Elston, 222 S.W.3d 731, 739 (Tex. App.CHouston [14th Dist.] 2007, no pet.). 








A party moving to compel arbitration must prove (1) the
existence of a valid agreement to arbitrate and (2) a dispute that falls within
the scope of the agreement.  In re Kellogg Brown & Root, Inc., 166
S.W.3d 732, 737 (Tex. 2005) (orig. proceeding); TMI, Inc. v. Brooks, 225
S.W.3d 783, 791 (Tex. App.CHouston [14th Dist.] 2007, pet. denied).  Any doubts on the scope of the
agreement must be resolved in favor of arbitration.  Prudential Sec., Inc.
v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995).  In fact, the policy in favor
of enforcing arbitration agreements is so compelling that a trial court should
not deny arbitration unless it can be said with positive assurance that an
arbitration clause is not susceptible of an interpretation covering the dispute
at issue.  Id.; Elston, 222 S.W.3d at 740.  

The parties in this case do not dispute the existence of a
valid arbitration agreement.  Rather, the issue is whether Tidwell and Rawl=s state employment
claims are covered by the arbitration agreements. 

B. 
Scope of Arbitration Agreement

Whether
a claim falls within the scope of an arbitration agreement is a question of law
we review de novo. See Elston, 222 S.W.3d at 740 (reasoning that whether
a claim falls within the scope of an arbitration agreement involves the trial
court=s legal interpretation of the
agreement, and we review such legal interpretations de novo).  We look at the
facts alleged, rather than the legal causes of actions presented, and consider
whether the facts touch matters covered by the underlying arbitration
agreement.  Leroy, 105 S.W.3d at 195.  In the absence of any express
provision excluding a particular grievance or complaint from arbitration, only
the Amost forceful evidence of a purpose
to exclude the claim from arbitration can prevail.@  AT&T Techs., Inc. v. Commc=ns Workers of Am., 475 U.S. 643, 650 (1986). 

Here,
the Form U-4 arbitration clause requires Tidwell and Rawl to arbitrate Aany dispute . . . that is
required to be arbitrated under the [FINRA] rules . . . . @  FINRA rule
13200(a) provides:

Except as otherwise provided in the Code, a dispute must be arbitrated
under the Code if the dispute arises out of the business activities of a member
or an associated person and is between or among:

Members;

Members and Associated Persons; or

Associated Persons.








It is undisputed that Stanford Group is a member and that
Tidwell and Rawl are associated persons under FINRA.  In their pleadings,
Tidwell and Rawl assert a cause of action for Awrongful
termination/employment discrimination.@  Tidwell and Rawl
base their employment claim on various practices and acts of Stanford Group. 
More specifically, they contend that Stanford Group: (1) prohibited its
financial advisors from filing mandatory security forms for clients possessing
IRA accounts containing Stanford International Bank, Ltd. certificates of
deposit; (2) neglected to notify holders of such IRA accounts of the civil and
criminal penalties associated with the failure to file the mandatory securities
forms; (3) violated FINRA regulations by overstating the asset value of individuals
in a manner designed to mislead potential investors; (4) ordered the removal or
destruction of information contained in client or company files in response to
an ongoing SEC investigation into Stanford Group=s certificate of
deposit sales practices; and (5) purged electronic data from its computers in
response to the SEC investigation.  According to Tidwell and Rawl, they were
constructively discharged for refusing to engage in these alleged illegal acts
and practices.  

The factual allegations asserted by Tidwell and Rawl
reflect a dispute between Stanford Group on one side, and Tidwell and Rawl on
the other side, which rose from Stanford Group=s business
activities in the securities industry.  Accordingly, rule 13200 requires that
the employment dispute be arbitrated.  However, an exclusion articulated in
Rule 13201 places certain statutory employment discrimination claims
outside  Rule 13200's reach.  Rule 13201 provides:

13201.  A claim alleging employment
discrimination, including sexual harassment, in violation of a statute, is not
required to be arbitrated under the Code.  Such a claim may be arbitrated only
if the parties have agreed to arbitrate it, either before or after the dispute
arose.  If the parties agree to arbitrate such a claim, the claim will be
administered under Rule 13802.   








The plain language of the rule 13201 exclusion requires
that Tidwell and Rawl=s state claims be a discrimination claim
that is Ain violation of a
statute.@  Accordingly, our
task is to determine whether Tidwell and Rawl=s factual
allegations that Stanford Group wrongfully discriminated against them for Arefusing to
participate in illegal acts relating to the marketing and sale of [Stanford
Group=s] financial
products@ form the basis of
an employment claim in violation of a statute.  Tidwell and Rawl claim that
Stanford Group violated chapter 21 of the Texas Labor Code.  Section 21.051 of
the Texas Labor Code defines discrimination by an employer and, in particular,
provides:

A[a]n employer commits an unlawful employment practice if because of
race, color, disability, sex, national origin, or age the employer: 

(1) . . . discharges an individual, or . . .
discriminates in any other manner against an individual in connection with
compensation or the terms, conditions, or privileges of employment; or 

(2) limits, segregates, or classifies an employee .
. . in a manner that would deprive or tend to deprive an individual of any
employment opportunity or adversely affect in any other manner the status of an
employee.  

Tex.
Lab. Code ' 21.051.

Tidwell and Rawl do not allege that they were discriminated
against based on any of the protected classes listed in section 21.051. 
Although they generally claim discrimination under chapter 21 of the Texas
Labor Code, Tidwell and Rawl fail to identify a provision under chapter 21 or
any other statute prohibiting discrimination based on the refusal to
participate in an employer=s illegal acts and practices.  Rather, the
conduct forming the basis of Tidwell and Rawl=s claims are
actionable under Sabine Pilot, a judicially-created cause of action, not
a statutory one.[4] 
See Sabine Pilot, 687 S.W.2d at 734-35; see also Camunes v. Frontier
Enters, Inc., 61 S.W.3d 579, 580-81 (Tex. App.CSan Antonio 2001,
pet. denied) (recognizing Sabine Pilot cause of action as a
judicially-created exception to the employment-at-will doctrine).








Because the exclusionary language of rule 13201 requires
that the employment claim be statutorily created before the exclusion will
apply, Tidwell and Rawl=s claims are within the scope of rule
13200.  See In re
Next Fin. Group, Inc.,
No. 08-0192, 2008 WL 4891735, at *5 (Tex. Nov. 14, 2008) (orig. proceeding)
(holding that an identical statutory discrimination exception was not
applicable because the employee=s cause of action, premised on his refusal to engage in
illegal acts, was judicially created by Sabine Pilot; therefore, the
claim was subject to arbitration).  Once a party seeking to compel arbitration
establishes that an agreement exists under the FAA and that the claims raised
are within the agreement=s scope, the trial court has no discretion but to compel
arbitration and stay its proceedings pending arbitration.  Cantella &
Co., Inc. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996).  Accordingly, the
trial court erred by denying Stanford Group=s motion to compel arbitration
pursuant to the FAA.[5]    

IV.  CONCLUSION

We conclude that the trial court
erroneously denied Stanford Group=s motion to compel arbitration.  A party who is erroneously
denied the right to arbitrate under the FAA has no adequate remedy at law, and
mandamus relief is appropriate.  Id. at 945.  We conditionally grant
Stanford Group=s writ of mandamus and direct the
trial court to order Tidwell and Rawl to arbitrate their claims under the FAA. 
The writ of mandamus will issue only if the trial court fails to comply.  We
dismiss Stanford Group=s interlocutory appeal for want of
jurisdiction.

 

 

/s/      Adele Hedges

Chief Justice

 

Judgment rendered
and Opinion filed December 9, 2008.

Panel consists of
Chief Justice Hedges and Justices Guzman and Brown.









[1]  In July 2007, NASD was consolidated into what is now
known as the Financial Industry Regulatory Authority (AFINRA@).  See In
re H&R Block Fin. Advisors, Inc., 262 S.W.3d 896, 900 (Tex. App.CHouston [14th Dist.] 2008, orig. proceeding).  Courts
continue to enforce NASD arbitration clauses through FINRA arbitration and
interpret and enforce NASD=s rules as
applicable to FINRA.  See id.  Accordingly, we use the acronym FINRA to
include NASD.  





[2]  The parties dispute the basis for Tidwell and Rawl=s December 2007 departure from the company. Stanford
Group claims that they were terminated, while Tidwell and Rawl claim that they
were forced to resign.





[3]  FINRA rule 13056(a) limits requests for documents or
information to Aidentification of individuals, entities, and time
periods related to the dispute.@  Rule 13510
strongly discourages depositions in arbitration and Athe panel may permit depositions . . . under very
limited circumstances . . . .@ 





[4]  In 1985, the Texas Supreme Court recognized the need for an exception
to the Texas employment-at-will doctrine for those employees wrongfully
terminated for refusing to engage in illegal activities and created a cause of
action for the discharge of an employee who refuses to perform such illegal
acts.  Sabine Pilot, 687 S.W.3d at 734-35.





[5]  Tidwell and Rawl also counter the motion to compel
arbitration by arguing that FINRA=s
limitations on discovery renders arbitration an improper forum for resolving
the employment claims.  Because the trial court has no choice but to grant a
motion to compel where the movant has established an agreement exists and the
claims raised are within the agreement=s
scope, their discovery-limitation argument has no merit.  See Cantella,
924 S.W.2d at 944.